UNITED STATES of America,
Plaintiff–Appellee,

v.

Zeek Martins Nna DOZIE, a/k/a Zeek
Nna Dozie, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Chudi Harold ANODE, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellant,

v.

Zeek Martins Nna DOZIE, a/k/a Zeek
Nna Dozie, Defendant–Appellee.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Cathy Lott Nna DOZIE, Defendant–
Appellant.

Nos. 93–5148, 93–5149, 93–
5205 and 93–5209.

United States Court of Appeals,
Fourth Circuit.

Argued March 11, 1994.

Decided June 13, 1994.

**ARGUED:** Harold Johnson Bender, Law Office of Harold J. Bender, Charlotte, NC, for appellant Zeek Nna Dozie; Robert B. Cordle, Smith, Helms, Mulliss & Moore, Charlotte, NC, for appellant Cathy Nna Dozie; Lawrence Wilson Hewitt, James, McElroy & Diehl, P.A., Charlotte, NC, for appellant Anode. William A. Brafford, Asst. U.S. Atty., Charlotte, NC, for appellee. **ON BRIEF:** Kenneth M. Smith, Smith, Helms, Mulliss & Moore, Charlotte, NC, for appellant Cathy Nna Dozie. Jerry W. Miller, U.S. Atty., Charlotte, NC, for appellee.

Before ERVIN, Chief Judge, HALL, Circuit Judge, and RONEY, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

Nos. 93–5148, 93–5149, and 93–5205 affirmed and No. 93–5209 reversed by published per curiam opinion.

---

1. Zeek has completed his prison sentence.

## OPINION

PER CURIAM:

Zeek Nna Dozie, Cathy Nna Dozie, and Chudi Anode appeal their convictions for mail fraud and conspiracy to commit mail fraud. The government cross-appeals the sentence imposed on Zeek Nna Dozie. We affirm the convictions of Zeek and Anode, but we reverse the conspiracy conviction of Cathy. We affirm Zeek's sentence.

### I

Zeek was the leader of a group in Charlotte that would buy multiple insurance policies on cars and then submit falsified claims based on non-existent or staged accidents. On May 4, 1992, a 17–count superseding indictment was returned against the appellants and nine others. Count 1 alleged a mail fraud conspiracy involving all twelve; the remaining counts alleged substantive instances of mail fraud. Prior to trial, seven substantive counts were dismissed, and various defendants fled or pled. The three appellants went to trial in September, 1992. The government dismissed some counts, motions for acquittal were granted as to others, and the jury acquitted each appellant on one substantive count apiece. When the dust finally cleared, all three appellants stood convicted on the conspiracy count. Zeek was also convicted on five substantive counts (2, 3, 6, 15 and 16) and Anode on a single substantive count (count 3). Zeek was sentenced to 21 months[1] and ordered to pay $77,000 in restitution. Cathy and Anode received probation.

All three appeal their convictions on the ground that the trial court committed reversible error in admitting evidence of prior bad acts. Cathy and Anode also appeal their respective conspiracy convictions on the grounds that the evidence was not sufficient to convict them. The government appeals the sentence imposed on Zeek.

### II

During trial, the government introduced evidence that involved activities relat-

ed to the dismissed counts. Fed.R.Evid. 404(b) provides:

> (b) **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Prior to trial, the government filed a notice of its intent to use "other bad acts" evidence; this notice, however, did not refer to evidence pertaining to the dismissed counts. The appellants now complain that this evidence came within Rule 404(b) and that the probative value of this evidence was outweighed by its prejudicial effect. Although the district court eventually came to treat some of this evidence as being covered by 404(b) and even gave limiting instructions, this action was unnecessary. Even though not introduced to prove the substantive crimes for which the defendants were being tried, this evidence concerned fraudulent insurance claims that fell within the time frame of the alleged conspiracy. Rule 404(b) was inapplicable because this evidence was admissible to prove involvement in the charged conspiracy and not simply to prove similar acts. *See United States v. Brugman,* 655 F.2d 540, 544–45 (4th Cir.1981).

### III

■ Anode and Cathy both claim that the evidence against them was insufficient to support the guilty verdicts. The standard of review is whether, viewing the evidence in the light most favorable to the government, any rational juror could have found guilt beyond a reasonable doubt. *United States v.*

*Campbell,* 977 F.2d 854, 856 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1331, 122 L.Ed.2d 716 (1993). We review the issue of the sufficiency of evidence *de novo. Id.*

■ To prove a conspiracy, the government must show an agreement to do something illegal, willing participation by the defendant, and an overt act in furtherance of the agreement. *United States v. Meredith,* 824 F.2d 1418, 1428 (4th Cir.1987), *cert. denied,* 484 U.S. 969, 108 S.Ct. 465, 98 L.Ed.2d 404 and 485 U.S. 991, 108 S.Ct. 1297, 99 L.Ed.2d 507 (1988). Knowledge and participation may be shown by circumstantial evidence. *Id.* Once a conspiracy has been established, it is only necessary to show a "slight connection between the defendant and the conspiracy to support conviction." *United States v. Brooks,* 957 F.2d 1138, 1147 (4th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 3051, 120 L.Ed.2d 917 (1992). Mail fraud requires a showing of (1) knowing participation in a scheme to defraud and (2) a mailing in furtherance of the scheme. 18 U.S.C. § 1341; *see United States v. Odom,* 736 F.2d 104, 109 (4th Cir.1984). With these principles in mind, we turn first to Anode's claim that the evidence at trial was insufficient as a matter of law to support the verdict against him on the conspiracy and substantive counts.

### A

■ Chudi Anode was found guilty of the conspiracy count and substantive count 3. Count 3 alleged that Anode "caused to be delivered by mail" a release form to the Hartford Insurance Company in conjunction with a claim for injuries arising out of a staged accident that occurred on September 22, 1988.[2] Anode argues that he never admitted (1) signing any documents, (2) being in the September 22nd accident, or (3) getting any of the settlement money. Circumstantial evidence, however, clearly ties him to this attempt to defraud the insurance company and to the overall conspiracy.

---

**2.** Zeek, who was driving at the time of the September 22nd accident, also filed an insurance

claim. Zeek was also convicted of count 3.

Anode has a brother Henry, and the essence of Chudi's argument is that it was Henry (who was not indicted) who made the fraudulent claim. The particular pieces of mail tying Anode to count 3 are a "release in settlement of claim" and accompanying copy of a tax return.[3] Both documents contain the signature "Henry Anode." The government contends that the handwriting on the documents is obviously the same as that on a tax return that was admittedly Chudi's and which was admitted as part of the government's case regarding another substantive count.[4] Moreover, these two tax returns have the same figures on most of the lines, and the return address on both is a post office box rented by Chudi Anode alone. An FBI agent testified that Chudi admitted that the "Henry" signature on the tax return looked like his own.[5] The Hartford check, made payable to Henry Anode, was endorsed by Chudi.

Under Fed.R.Evid. 901(b)(3), expert opinion on handwriting is not necessary. The authenticity of the tax return related to count 2 was sufficiently established, and it was permissible for the jury to compare the handwriting on the count 2 tax return with that on the count 3 return. That Chudi prepared the count 3 documents and submitted them to the Hartford Insurance Company is clearly a legitimate inference, and this evidence is sufficient to support the verdicts.

### B

■ Cathy, Zeek's wife, was convicted of conspiracy but acquitted of the only substantive count that went to the jury (count 12); although she had been charged on other counts, these were dismissed prior to trial or after both sides had rested. She alone among the defendants testified at trial, and she denied involvement in or knowledge of her husband's fraudulent doings. She con-

tends for the use of a "heightened vigilance" standard because of her marital relationship with Zeek. While we do not agree that she is entitled to be tried under a more stringent standard of proof, we are cognizant of the danger that the very fact of her close relationship with her husband will inhere to her disadvantage.

Cathy was never tied to the conspiracy by any of the other persons involved, and there is no evidence whatsoever that she benefitted personally from the receipt of insurance proceeds. One of the government's theories is that Cathy procured some of the policies but intentionally omitted her husband's name so as not to arouse suspicion, but this inference finds no support in the record.

The government's reliance on conduct underlying counts that were either dismissed or for which Cathy was acquitted is similarly unavailing. We are convinced that the record, even when viewed under the extremely deferential standard of *Jackson v. Virginia*,[6] fails to support her conspiracy conviction. "[C]ircumstantial evidence that proves nothing more than association between two persons, even if one has a fixed intent known to the other to commit an unlawful act, is not sufficient to permit the inference of the requisite agreement between the two to act in concert or commit the act." *United States v. Giunta*, 925 F.2d 758, 766 (4th Cir.1991).

### IV

The claims submitted by the conspirators totalled $367,000, the claims personally submitted by Zeek totalled about $271,000, and the amount actually paid out to the various conspirators was $110,000. The court, noting that "anything one sends to an insurance company is subject to an immediate discount," used a "loss" figure of $77,000 in determining the offense level under U.S.S.G. § 2F1.1(b) (Nov.1990).[7] The government

---

3. The tax return was submitted as proof of lost wages, an element of the claim.

4. Chudi's tax return was sent to another insurance company with regard to a June 18, 1988, accident, which accident was the subject of count 2. Chudi was acquitted of count 2.

5. Agent Mueller testified that Chudi Anode became inconsolable during his interview and said

that "he knew he was in trouble, that this would disgrace his family name."

6. 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

7. $77,000 is also the restitution ordered by the court, but the government does not seem to be

cross-appeals the sentence.[8]

The meaning of "loss" is a question of law that we review *de novo*, while the calculation of the loss is a finding of fact reviewable for clear error. *United States v. Holiusa*, 13 F.3d 1043, 1045 (7th Cir.1994). The government wants to use the $357,000 figure, which would increase the total offense level to 19 and the sentencing range to 30–37 months. One court has held that the face amount of the false claims is the relevant figure. *United States v. Lghodaro*, 967 F.2d 1028 (5th Cir.1992). While this measure has the advantage of ease of application, it increases the risk that the "harmfulness and seriousness of the conduct" will be overstated. U.S.S.G. § 2F1.1, comment. (n.9); *see United States v. Kopp*, 951 F.2d 521, 529 (3rd Cir.1991) ("The fraud guideline . . . has never endorsed sentencing on the worst-case scenario potential loss."). We believe that the Guidelines call for a more flexible method of calculating loss than that endorsed in *Lghodaro*.

The circuits are split on how "loss" under § 2F1.1 should be determined. *See United States v. Prendergast*, 979 F.2d 1289, 1292 n. 1 (8th Cir.1992) (collecting cases). The commentary to § 2F1.1 provides: "[I]f a probable[9] or intended loss that the defendant was attempting to inflict can be determined, that figure would be used if it was larger than the actual loss."[10] Thus, it is the "probable *or* intended loss" that is the relevant figure, and "the Guidelines . . . permit the district court to use probable loss in lieu of intended loss." *United States v. Davis*, 922 F.2d 1385, 1392 (9th Cir.1991); *see also United States v. Stanley*, 12 F.3d 17, 20 (2nd Cir.1993), *cert.*

*denied,* —— U.S. ——, 114 S.Ct. 1572, 128 L.Ed.2d 216 (1994). The estimate of a fraud loss "must reflect economic reality, [and] the loss figure need not be precise but may be a reasonable estimate." *United States v. Khan*, 969 F.2d 218, 221 (6th Cir.1992) (internal quotations omitted). While the term "intended loss" is a subjective measure, "probable loss" connotes an objectively-measured harm. *See United States v. Sneed*, 814 F.Supp. 964, 970 (D.Colo.1993).

As the district court correctly noted, insurance claims are frequently inflated. Basing the probable loss on the claim, then, does not reflect economic reality. *See United States v. Santiago*, 977 F.2d 517, 524 (10th Cir.1992) (holding that an "intended loss . . . cannot exceed the loss a defendant could have occasioned if his or her fraud had been entirely successful"). For example, Chudi Anode's claim for the injuries allegedly received in the June 18, 1988, accident amounted to $23,019, $10,000 of which was for "pain and suffering." Three months later, he settled for $4,000. Most of the claims were settled in a similar manner, at least until the scheme began to unravel.

The use of an objective "probable loss" analysis is particularly appropriate in a case such as the one before us. Each substantive count was tied to a different accident and a corresponding attempt to defraud. Many of these discrete facets of the ongoing scheme had flowered into fully realized crimes for which the actual loss, *i.e.*, the settlement with the insurance company, provides conclusive evidence of the probable loss. *See United States v. Bailey*, 975 F.2d 1028 (4th Cir.1992)

---

8. Under § 2F1.1, Zeek's offense level would be increased by 1 point for a loss more than $120,000, 2 points if more than $200,000, and 3 points if more than $350,000.

complaining about this. Restitution is figured under a different law altogether, the Victim and Witness Protection Act, 18 U.S.C. § 3664(a) (VWPA), and takes into account the defendant's ability to pay, the loss sustained, etc. In offense-level determinations under the sentencing guidelines, however, the only factor is the loss. The government notes that "if the [appeals] court were to conclude that the district court should have used $110,000, such a conclusion would not change the offense level but would affect the restitution ordered." This is the only reference to restitution in this section of the brief, and the VWPA is not mentioned anywhere. The restitution order is simply not on appeal.

9. The term "probable" was deleted by the 1991 amendments to the Guidelines. U.S.S.G.App. C, amend. 393. The end of the conspiracy in the instant case predated the effective date of the amendment by some seven months. *See Holiusa*, 13 F.3d at 1045–46 (discussing amendment).

10. Section 2F1.1 originally read "if the estimated, probable or intended loss exceeded ...," but this was changed to "if the loss exceeded ..." *See* U.S.S.G.App. C, amend. 30.

(holding that "intended loss" applies to *attempt* crimes only, and that out-of-pocket loss is the relevant figure under § 2F1.1 for fully realized crimes). We find no clear error in the court's reduction of the exaggerated claims of Nna Dozie to reflect the "probable loss,"[11] and we affirm the sentence.

No. 93–5148—*AFFIRMED.*

No. 93–5149—*AFFIRMED.*

No. 93–5209—*REVERSED.*

No. 93–5205—*AFFIRMED.*

---

11. The evidence at the sentencing hearing was that Zeek was involved in three claims that resulted in no losses to the insurance companies, but the face amount of these claims was less than $7,000. J.A. 640–41. Therefore, even if the face amounts of the claims that were not fully realized are added to the actual loss involved, the result does not exceed the threshold amount of $120,000.