56 F.3d 78
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Daniel WARDWELL, Defendant-Appellant.
 No. 94-1161.
 United States Court of Appeals, Tenth Circuit.
 May 25, 1995.
 
 1
 Before KELLY and HENRY, Circuit Judges, and BURCIAGA, District Judge.[2]
 
 HENRY
 
 2
 Defendant-appellant Daniel Wardwell appeals his convictions for mail fraud and making false statements on Internal Revenue Service forms, challenging the sufficiency of the evidence presented to the jury. We exercise jurisdiction under 28 U.S.C. 1291 and affirm.
 
 BACKGROUND
 
 3
 Because the parties are familiar with the record, we summarize only those facts relevant to the issues raised on appeal. A superseding indictment charged Mr. Wardwell with four counts of mail fraud in violation of 28 U.S.C. 1341 and two counts of making false statements on Internal Revenue Service forms in violation of 26 U.S.C. 7206(1). In the mail fraud counts, the government alleged that from December 1989 until December 1991 Mr. Wardwell engaged in a scheme to defraud Ms. Janice Lee Rogers and the State Farm Insurance Companies (State Farm). The mail fraud counts focused on allegedly false statements in an insurance application and an affidavit of vehicle theft signed by Mr. Wardwell. In the Section 7206(1) counts, the government first alleged that Mr. Wardwell failed to report as income on his individual income tax return for 1990 at least $7,204.13 that he had received from State Farm in November of that year. The government also alleged that in a June 1991 statement submitted to the Internal Revenue Service, Mr. Wardwell failed to report equity that he owned in two automobiles.
 
 
 4
 At trial, the government presented evidence indicating that in November 1989 Ms. Rogers and Mr. Wardwell purchased a used Jeep Cherokee with distinctive gold wheels. The Jeep was to be used for a restaurant that they intended to open in Aspen, Colorado. They paid for the Jeep with funds from a partnership checking account in a Plano, Texas bank. Ms. Rogers provided all of the funds for the account.
 
 
 5
 Ms. Rogers requested Mr. Wardwell to obtain insurance, title, and registration for the Jeep. In December 1989, Mr. Wardwell filed an application for insurance with State Farm that overstated the Jeep's purchase price and incorrectly reported that he was its sole owner and operator. In obtaining title and registration, Mr. Wardwell made several other false statements.
 
 
 6
 In September 1990, Ms. Rogers reported to the Aspen police that the Jeep had been stolen. At her request, Mr. Wardwell filed an insurance claim under the State Farm policy. In an affidavit of vehicle theft, Mr. Wardwell again overstated the purchase price of the vehicle and incorrectly reported that he was its sole owner. State Farm paid Mr. Wardwell $7,204.13 in November 1990 and $7,004.12 in January 1991. Mr. Wardwell paid none of these proceeds to Ms. Rogers.
 
 
 7
 In late December 1990 or early January 1991, the manager of the Inn at Aspen noticed that a blue Jeep Cherokee with gold wheels had been parked in the same space in the hotel parking lot for several days. The manager found a receipt containing Mr. Wardwell's name inside the Jeep. He looked in the public telephone directory, found only one Daniel Wardwell listed, called the listed number, and spoke to a man who identified himself as Daniel Wardwell. The manager asked the man to remove the Jeep, and several days later he noticed that it was no longer parked in the hotel lot.
 
 
 8
 In May 1991, the Pitkin County Sheriff received a telephone call from Mr. Wardwell. Mr. Wardwell advised him that the blue Jeep Cherokee was parked outside an Aspen hotel. Mr. Wardwell requested the sheriff not to disclose that he had provided this information. Law enforcement officials recovered the Jeep and returned it to State Farm.
 
 
 9
 In June 1991, Mr. Wardwell signed an Internal Revenue Service Collection Information Statement (Form 433-A) which stated that he owned no equity in any automobiles. At the time, Mr. Wardwell owned equity in a Mercedes-Benz 450 SL and a Jeep Wrangler.
 
 
 10
 In October 1991, Mr. Wardwell filed an income tax return for 1990. A certified public accountant prepared the return based on information provided by Mr. Wardwell. Mr. Wardwell's return did not include the $7,204.13 that State Farm paid him for the reported theft of the Jeep.
 
 
 11
 The case was tried to a jury in February 1994. At the conclusion of the government's case, Mr. Wardwell moved for a judgment of acquittal, arguing in part that there was insufficient evidence to establish that he was the same Daniel Wardwell about whom the government's witnesses testified. The district court denied Mr. Wardwell's motion, and the jury convicted him on all six counts.
 
 DISCUSSION
 Identification of the Defendant
 
 12
 In assessing the sufficiency of the evidence, we examine the record de novo. United States v. Grimes, 967 F.2d 1468, 1472 (10th Cir.), cert. denied, 113 S.Ct. 355 (1992). However, we consider the evidence, "both direct and circumstantial, together with the reasonable inferences to be drawn therefrom" in the light most favorable to the government. United States v. Hooks, 780 F.2d 1526, 1531 (10th Cir.), cert. denied, 475 U.S. 1128 (1986). Evidence is sufficient to sustain a conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt. Id.
 
 
 13
 Mr. Wardwell argues on appeal that the evidence presented by the government is insufficient to permit the inference that he committed the crimes of which he was convicted. Acknowledging that four of the government's witnesses identified him as the Daniel Wardwell about whom they testified, he characterizes their testimony as peripheral to the government's case. He maintains that no witness who testified as to the essential elements of the charged offenses was asked to identify him in the courtroom.
 
 
 14
 The identity of a defendant may be established by "inference and circumstantial evidence.' " United States v. Seals, 987 F.2d 1102, 1110 (5th Cir.) (quoting United States v. Royals, 777 F.2d 1089, 1091 (5th Cir.1985)), cert. denied, 114 S.Ct. 155 (1993). Accordingly, if the evidence presented to the jury permits the inference that the defendant is the person who committed the crime, courtroom identification is not required. Id.; United States v. Morrow, 925 F.2d 779, 781 (4th Cir.1991); United States v. Capozzi, 883 F.2d 608, 617 (8th Cir.1989), cert. denied, 495 U.S. 918 (1990). Upon review of the record, we find sufficient evidence from which the jury could reasonably infer that the defendant-appellant was the same Daniel Wardwell who committed the crimes in question.
 
 
 15
 We first note the testimony of the four witnesses who identified the defendant in the courtroom. Internal Revenue Service Agent Douglas Kelch testified that the defendant owed in excess of $290,000 in unpaid taxes and that, in a November 1986 interview, the defendant indicated that he "intended to drop out of the system" such that he would never have any assets in his name. Rec. vol. III, at 6. Two other witnesses, Cody McCutchin and Charles Bailey, testified that the defendant purchased automobiles from them in April and May 1991, shortly before the signing of the Internal Revenue Service form indicating that Daniel Wardwell held no equity in any automobiles. Finally, Harvey Stepanik testified that he observed distinctive gold wheels on a white Jeep Wrangler that the defendant offered for sale in January 1991.
 
 
 16
 More importantly, in the cross-examination of Ms. Rogers, the district court admitted into evidence an invitation to a birthday party for Mr. Wardwell that contained a caricature of him. Rec. vol. III, at 103-05. From this caricature, the jury could reasonably conclude that the defendant was the same Daniel Wardwell about whom Ms. Rogers testified. Moreover, on the basis of other parts of Ms. Rogers's testimony, the jury could also infer that the defendant was the same man who committed a variety of the acts alleged by the government. For example, Ms. Rogers identified bank records for the partnership account used to purchase the blue Jeep Cherokee. Some of these records contained the signature of the Daniel Wardwell about whom Ms. Rogers testified. The jury could properly compare the signatures on these bank records to the signatures of Daniel Wardwell on the insurance application, the affidavit of vehicle theft, and the Internal Revenue Service forms and could reasonably conclude that the defendant signed all of those documents. See United States v. Dozie, 27 F.3d 95, 97-98 (4th Cir.1994) (jury can compare handwriting samples and make inferences about identity); United States v. Clifford, 704 F.2d 86, 90-91 (3d Cir.1983) (same); United States v. Rich, 580 F.2d 929, 936 (9th Cir.), cert. denied, 439 U.S. 935 (1978) (same).
 
 
 17
 The inference that the defendant signed the insurance and tax documents is also supported by the testimony of the government's handwriting expert Charles Haywood. Mr. Haywood testified that he had compared the signatures of Daniel Wardwell in the insurance and tax documents introduced by the government to exemplars that were represented to him to be the handwriting of the defendant. Mr. Haywood stated that, in his opinion, the same person who prepared the handwriting exemplars had signed the insurance and tax documents. Although the government did not present a witness to directly identify the defendant as the person from whom the exemplars were taken, the defendant did not object to Mr. Haywood's statements that the exemplars had been represented to him to be the defendant's handwriting.[3] In the absence of an objection, and in conjunction with Ms. Roger's testimony as to particular documents that the defendant had signed, the jury could properly rely on Mr. Haywood's testimony to connect the defendant to the falsified documents. See United States v. Taylor, 800 F.2d 1012, 1016-17 (10th Cir.1986), cert. denied, 484 U.S. 838 (1987) (finding evidence admissible when the defendant failed to properly object).
 
 
 18
 The testimony of several other witnesses further supports the jury's conclusion regarding the defendant's identity. As noted above, the manager of the Inn at Aspen testified that a man who identified himself as Daniel Wardwell answered a telephone call to the number of the only Daniel Wardwell listed in the Aspen directory. Ms. Rogers testified that she and the defendant lived on the street listed in the directory, McLain Flats Road. Identification of a party to a telephone conversation may be established by this kind of circumstantial evidence. See United States v. Kingston, 971 F.2d 481, 485 (10th Cir.1992).
 
 
 19
 Finally, Chad Wimberly, a witness who lived in the McLain Flats Road residence with Ms. Rogers and Daniel Wardwell, testified that he observed Mr. Wardwell driving a white Jeep Wrangler with gold wheels in January 1991. Although Mr. Wimberly did not identify the Mr. Wardwell about whom he testified as the defendant in the courtroom, the jury could infer from the testimony of other witnesses, particularly Ms. Rogers and the manager of the Inn at Aspen, that it was indeed the defendant whom Mr. Wimberly saw driving the white Jeep Wrangler with the gold wheels.
 
 
 20
 Accordingly, from all of the testimony presented, the jury could justifiably find that the defendant, Mr. Wardwell, submitted falsified documents to State Farm and the Internal Revenue Service and that the Jeep Cherokee had not actually been stolen. We therefore conclude that there was sufficient evidence from which the jury could conclude beyond a reasonable doubt that the defendant, and not some other Daniel Wardwell, committed the crimes charged.
 
 Tax Count
 
 21
 Mr. Wardwell also argues that the evidence is insufficient to support his Section 7206(1) conviction for filing a false tax return for 1990. He argues that because he disclosed to his accountant that he had received $7,204.13 in insurance proceeds from State Farm and because his accountant did not inform him that he was required to report these proceeds as income, the jury could not reasonably conclude that he knowingly and willfully submitted a false tax return.
 
 
 22
 "The gist of [a Section 7206(1) ] offense is a false statement, willfully made, of a material matter.' " United States v. Samara, 643 F.2d 701, 703 (10th Cir.) (quoting United States v. Brown, 446 F.2d 1119, 1122 (10th Cir.1971)), cert. denied, 454 U.S. 829 (1981). Willfulness may be inferred from "concealment of assets or covering up sources of information, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or conceal.' " Id. at 704 (quoting Spies v. United States, 317 U.S. 492, 499 (1943)). In certain circumstances, good faith reliance on professional advice constitutes a defense to a Section 7206(1) charge. See United States v. Brimberry, 961 F.2d 1286, 1290-91 (7th Cir.1992). However, a defendant must establish that he has fully disclosed all the relevant facts. Id.; United States v. Wilson, 887 F.2d 69, 73 (5th Cir.1989).
 
 
 23
 Here, the record indicates that although Mr. Wardwell disclosed his receipt of the insurance proceeds to his accountant, he failed to disclose that the Jeep Cherokee was paid for by Ms. Rogers. Based on the evidence presented at trial, the jury could also conclude that Mr. Wardwell failed to disclose another material fact: that the vehicle was not actually stolen. In light of these material omissions, the jury could conclude beyond a reasonable doubt that Mr. Wardwell knowingly and willfully made false statements on his 1990 tax return.
 
 
 24
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order. 151 F.R.D. 470 (10th Cir.1993)
 
 
 [2]
 The Honorable Juan G. Burciaga, Senior United States District Judge for the District of New Mexico, sitting by designation. After this appeal was submitted, Judge Burciaga passed away. Judge Burciaga did not participate in this opinion. In this regard, see 28 U.S.C. 46(d)
 
 
 [3]
 Prior to Mr. Haywood's testimony, Mr. Wardwell's attorney stated that he would not object to testimony regarding handwriting exemplars obtained from Mr. Wardwell unless the proper foundation was not subsequently provided. The district court stated, "There will be no objection other than if it's not connected up, you can move to strike it and I will so instruct the jury." Rec. vol. IV, at 364. Mr. Wardwell never moved to strike Mr. Haywood's testimony