RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0002p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 02-3570

RUSSELL J. SAADEY, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 00-00488—Kathleen O'Malley, District Judge.

Argued: March 16, 2004

Decided and Filed: January 5, 2005

Before: BATCHELDER and GIBBONS, Circuit Judges; COHN, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Brian P. Kopp, BETRAS, MARUCA & KOPP, LLC, Canfield, Ohio, for Appellant. Thomas J. Gruscinski, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Brian P. Kopp, David J. Betras, BETRAS, MARUCA & KOPP, LLC, Canfield, Ohio, for Appellant. Thomas J. Gruscinski, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

ALICE M. BATCHELDER, Circuit Judge. Defendant-Appellant Russell J. Saadey appeals his conviction and sentence for racketeering offenses in violation of 18 U.S.C. §§ 1962(d) and 1963(a); attempted extortion under color of official right in violation of 18 U.S.C. § 1951 (the Hobbs Act); and multiple counts of filing false tax returns and credit applications. Because we hold that the Hobbs Act does not reach the conduct alleged in Count 8 of the Superceding Indictment, we REVERSE Saadey's conviction for attempted extortion. Because we conclude that Saadey's conviction on Count 1, RICO conspiracy in violation of 18 U.S.C. §§ 1962(d) and 1963(a) is supported by the evidence and is not time-barred, we AFFIRM the conviction. We AFFIRM his conviction on the remaining claims, and REMAND this matter for resentencing consistent with this opinion.

_____

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

## I. Background

From 1992 until the end of 1996, prosecutors, investigators, defense attorneys and judges in Mahoning County were involved in fixing the outcomes of criminal cases in the courts in that county. In 1994 and 1995, Russell Saadey was employed by the Mahoning County Prosecutor as an investigator. During those years, Saadey participated in this case-fixing activity. On December 6, 2000, Saadey and James Vitullo, an Assistant Prosecutor in the Mahoning County Prosecutor's Office, were indicted for their activities. On June 19, 2001, a twenty-one count superceding indictment was handed down against the two.

Saadey was charged in Count 1of the Superceding Indictment with RICO conspiracy in violation of 18 U.S.C. § 1962(d); the acts comprising the pattern of racketeering activity in the conspiracy consist of multiple acts of extortion in violation of Ohio Revised Code §§ 2905.11(A)(5), 2923.02,and 2923.03, and bribery of public officials in violation of Ohio Revised Code §§ 2921.02, 2923.02 and 2923.03. He was charged in Count 6 with conspiracy to commit extortion under color of official right, in violation of 18 U.S.C. § 1951 (the Hobbs Act); in Count 8 with attempted extortion under color of official right and aiding and abetting attempted extortion under color of official right in violation of 18 U.S.C. §§ 1951 and 2; in Counts 14-16 with filing false tax returns in violation of 26 U.S.C. § 7206(1); and in Counts 17-21 with making false statements in credit applications in violation of 18 U.S.C. §§ 1014 and 2. Vitullo was charged in the RICO conspiracy count; he was further charged with extortion under color of official right in Counts 2-5, 7 and 9-13, and conspiracy to commit extortion under color of official right in Count 6, all in violation of 18 U.S.C. § 1951. Vitullo was named but not charged in Count 8, the attempted extortion count.

Section 2(c) of Count 1, the RICO conspiracy count, includes 28 separate overt acts that the government charges were the predicate acts for the RICO conspiracy; five of those are instances in which Saadey, while employed by the Prosecutor's Office, solicited or attempted to solicit money from individuals charged with criminal offenses, for the stated purpose of "fixing" those individuals' criminal cases. Two of the overt acts—section 2(c) (19) and (22) — are instances in which Saadey solicited or attempted to solicit money from such individuals after Saadey had left the employ of the Prosecutor's Office. The activities described in these latter two overt acts are also the subjects of Counts 6 and 8 respectively, the only two substantive extortion counts in which Saadey was charged. Because Saadey was eventually acquitted of the conduct charged in Count 1§ 2(c)(19) and Count 6, we address only the conduct charged in Count 1 § 2(c)(22) and Count 8.

Count 1 § 2(c)(22) recites that in May 1996, Saadey "attempted to solicit approximately $16,000 from Kenneth Olsavsky. [Saadey] told Kenneth Olsavsky that the money would be used in an attempt to bribe James A. Vitullo to reduce charges in two pending [DUI] cases [against Olsavsky]." Count 8 charges that in May 1996, Saadey attempted to "obtain property from another with that person's consent under color of official right, by soliciting approximately $16,000 from Kenneth Olsavsky under the pretense that the money would be used to bribe James A. Vitullo, named but not charged in this count, to reduce charges in two pending [DUI] cases" against Olsavsky.

Prior to trial, Saadey filed a Motion to Dismiss Count 8 and to strike Count 1§ 2(c)(22), arguing that Count 8 did not charge extortion as defined by the Hobbs Act, and Count 1 § 2(c)(22) did not charge any act that violated Ohio law. The district court denied this motion to dismiss in part and ruled that Saadey, a private citizen, could be prosecuted under the Hobbs Act because he "masqueraded" as a public official and, alternatively, because Saadey "held himself out to have . . . an ability to effect the decision [of a public official]." The court did, however, grant Saadey's motion to dismiss to the extent that the indictment charged him with aiding and abetting the substantive offense of extortion under the Hobbs Act. The court did not explicitly address Saadey's claim that Section 2(c)(22) did not allege acts that violated Ohio's extortion laws.

Saadey also moved prior to trial to sever Counts 17-21, the counts charging him with filing false credit applications. The court denied the motion, holding the false tax return counts and the false credit

application counts contained overlapping evidence, and Saadey would not suffer any obvious prejudice if those counts were tried with the RICO and extortion counts. During the trial, Saadey objected to the admissibility of falsified credit applications containing his signature, claiming that they were not properly authenticated because the district court allowed the jurors to make lay handwriting comparisons. The district court overruled this objection, stating that "a trier of fact is capable of assessing or comparing handwriting exemplars with known handwriting material." Saadey also filed a motion, under seal, to introduce evidence showing that FBI Agent Anthony Speranza (who did not testify at Saadey's trial) had had a sexual relationship with the wife of a government witness. Saadey argued that this evidence showed Agent Speranza's animus toward Saadey. The district court denied this motion on the grounds that an investigator's animus is irrelevant to Saadey's guilt or innocence.

At the close of the trial, the jury acquitted Saadey's co-defendant, James Vitullo, on all counts. The jury found that Saadey had voluntarily joined in the conspiracy charged in Count 1; found him guilty of committing the predicate acts set out in Section 2(c)(3), (7), (13) and (22), but not guilty of committing the predicate act set out in Section 2(c)(19); and found him guilty on Count 1, the RICO conspiracy. The jury found Saadey not guilty of the extortion charged in Count 6, but guilty on Count 8, the substantive count of attempted extortion under color of official right. Finally, the jury found Saadey guilty on all of the false tax return and false credit application counts. The district court sentenced Saadey to concurrent terms of imprisonment of 55 months on Counts 1 and 8, 36 months on counts 14-16, and 55 months on Counts 17-21, and to payment of restitution in the amount of $23,879.62 for the loss incurred by the financial institutions as a result of the false credit applications. In calculating Saadey's offense level, the district court increased the offense level by one, although it is not clear from the record the exact basis for this increase. Saadey's motions for acquittal and for a new trial were denied, and Saadey timely appealed.

In this appeal, Saadey first challenges his conviction under the Hobbs Act for attempted extortion under color of official right, claiming that the district court erred in concluding that a private individual who "masquerades" as a public official can be convicted for extortion "under color of right" under the Hobbs Act, and claiming further that the evidence was not sufficient to sustain his convictions under Count 1 and Count 8 of the Superceding Indictment. He further assigns as error the district court's denial of his motion to sever Counts 17-21, the court's admission into evidence of documents containing Saadey's signature, the court's refusal to permit evidence attacking the good faith of an investigator, and the court's upward departure in sentencing.

## II.

### A. The Hobbs Act Conviction

Saadey contends that, as a private individual, he cannot be found guilty of the crime charged in Count 8 of the Superceding Indictment, namely, that he "attempted to [] affect commerce by extortion, that is, by attempting to obtain property from another [] under the color of official right," in violation of the Hobbs Act, 18 U.S.C. § 1951. As defined by the Hobbs Act, "[t]he term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Whether a private individual can be found guilty of extortion under color of official right presents a question of statutory interpretation. This Court reviews such questions de novo. *See United States v. Murphy*, 107 F.3d 1199, 1208 (6th Cir. 1997).

As a general matter, prosecuting private citizens under the "color of official right" theory of extortion is inappropriate under the Hobbs Act, irrespective of the actual influence that private citizen purports to maintain over government officials. *United States v. McClain*, 934 F.2d 822, 831 (7th Cir. 1991). Some courts have carved out an exception for private citizens who either masquerade as, or act in coordination with, public officials, but in each of those cases a public official "in some past, present or future capacity receiv[ed] money." *United States v. Tomblin*, 46 F.3d 1369, 1382 (5th Cir. 1995). In *Tomblin*, the Fifth Circuit held that this exception did *not* permit prosecution of the defendant under the

"official right" theory. Tomblin, a private citizen, coerced his victims into giving him money by threatening to use against them his political influence with a United States Senator. *Id.* 1382-83. Tomblin was convicted of extortion under color of official right, and the Fifth Circuit reversed. The court held that his actions did not result in any public official's receiving any money; Tomblin himself was neither a public official nor in the process of becoming one; Tomblin's victims did not believe that he was a public official; and the influence Tomblin threatened to use was not official power. *Id.* at 1382-83.

This Circuit has recognized that the Hobbs Act may reach private individuals under some circumstances. In *United States v. Collins*, 78 F.3d 1021, 1031-2 (6th Cir. 1996), Collins, the husband of the Kentucky Governor but nonetheless a private citizen, had successfully conspired with various Kentucky state officials to extort payments from persons seeking to do business with the Commonwealth. Collins was convicted of conspiracy to commit extortion under color of official right, in violation of the Hobbs Act. We affirmed that conviction, rejecting Collins's attempt to rely on *Tomblin*, which we found clearly distinguishable because Tomblin had been convicted of the substantive offense of extortion, not of conspiracy to commit that offense, and he had not been accused of conspiring with a government official. Collins, on the other hand, had actively conspired with government officials to extort payments from potential state contractors. *Id.* at 1031. In affirming Collins's conviction, we relied on the Ninth Circuit's decision in *United States v. Freeman*, 6 F.3d 586 (9th Cir. 1993): "The Hobbs Act reaches 'anyone who actually exercises official powers.'" *Collins*, 78 F.3d at 1032 (quoting *Freeman*, 6 F.3d. at 593). *Freeman*, we explained, was a case in which "the court found sufficient evidence that the defendant legislative aide created the impression that he could affect legislation, and that he did, in fact, use his official position to shepherd bills through the legislative process to induce payments from the undercover FBI agents." *Id.* We agreed with the conclusion of the Ninth Circuit that "the Hobbs Act reaches those *public employees* who may lack the actual power to bring about official action, but create the reasonable impression that they do possess such power and seek to exploit that impression to induce payments." *Id.* (italics added). We think *Collins* has made it clear that, in this circuit, a private citizen who is not in the process of becoming a public official may be convicted of Hobbs Act extortion under the "color of official right" theory only if that private citizen either conspires with, or aids and abets, a public official in the act of extortion.

The United States concedes that Saadey was not a public official at the time of this attempted solicitation, and the record contains no evidence that he was in the process of becoming a public official. We must determine, therefore, whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Saadey conspired with or aided and abetted a public official in the act of extortion. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (holding that in judging the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.")

We conclude that the evidence does not support such a finding. Count 8 charges that Saadey attempted to solicit money from criminal defendant Kenneth Olsavsky "under the pretense that the money would be used to bribe James A. Vitullo, named but not charged in this count, to reduce charges in two pending cases." The United States offered no evidence that Saadey aided and abetted Vitullo—or any other public official—in extorting money from Olsavsky and the district court refused to charge the jury on the issue of aiding and abetting. Count 8 does not allege that Saadey conspired with Vitullo—or any other public official—to extort money, but instead alleges that Saadey attempted to solicit money from Olsavsky under the "pretense" that he would use that money to bribe Vitullo. Finally, the jury acquitted Vitullo on all charges of conspiracy. Accordingly, we hold that Saadey's conviction on Count 8 of the superceding indictment must be reversed.

## B. The RICO Conspiracy Conviction

Saadey contends that the evidence is not sufficient to "sustain [his] conviction[] in Count One section 2(c)(22) . . . of the Superceding Indictment." He argues that the conduct charged in Count One

section 2(c)(22) cannot be a predicate offense for purposes of the RICO statute because it does not satisfy either the elements of extortion under color of right under 18 U.S.C. § 1951 or the elements of Ohio's extortion statute; of the four overt acts that the jury found some member or members of the conspiracy had committed or agreed would be committed in furtherance of the conspiracy, this is the only one that falls with the five-year limitations period for bringing this RICO conspiracy prosecution; and, therefore, his conviction on Count 1, the RICO conspiracy charge, must be reversed.

In order to obtain a conviction for RICO conspiracy, the government does not need to prove that the defendant committed or agreed to commit two predicate acts himself, or even that any overt acts have been committed. *See Salinas v. United States*, 522 U.S. 52, 63 (1997) ("There is no requirement of some overt act or specific act in the statute before us.")  In fact, the Supreme Court has held,

> One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense.  It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself.

*Id.* at 65.

The offense charged in Count 1 of the Superceding Indictment is conspiracy to conduct the affairs of an enterprise through a pattern of racketeering activity, "consisting of multiple acts involving extortion in violation of Ohio Revised Code, Sections 2905.11(A)(5), 2923.02, and 2923.03, and multiple acts involving the bribery of public officials in violation of Ohio Revised Code, Sections 2921.02, 2923.02, and 2923.03."  While it is not incumbent upon the government to prove that Saadey—or anyone else—actually committed any of these acts, *see Salinas*, 522 U.S. at 63, the government must prove that Saadey intended to further "an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense [and] it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Id.* at 65.

Although we agree with Saadey that the conduct charged in Section 2(c)(22) cannot be a predicate offense because it does not satisfy the elements of extortion under Ohio Rev. Code §§ 2905.11(A)(5), 2923.02 or 2923.03,[2] and we view as error the district court's failure to address the part of Saadey's pretrial motion raising this issue, we conclude that the error is harmless.[3]  To support his contention that—because the only predicate act found by the jury to have occurred within five years of the indictment does not charge a crime under Ohio law— his conviction must be reversed on statute of limitations grounds, Saadey cites only cases reviewing convictions for substantive RICO offenses.  But Saadey was not charged with a substantive RICO violation, which unquestionably would have required proof that he committed at least one predicate act within the five-year limitations period governing RICO prosecutions. *See* 18 U.S.C. § 3282. Saadey was charged with RICO conspiracy, and as we have explained, conviction on a charge of RICO conspiracy does not require the government to prove that *any* predicate act was actually committed at all. Therefore, the fact that the conduct charged in section 2(c)(22) cannot constitute a predicate offense is

---

[2]Ohio Rev. Code § 2905.11(A)(5) provides:
(A)No person, with purpose to obtain any valuable thing or valuable benefit or to induce another to do an unlawful act, shall do any of the following:
(5) Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit.
   Ohio Rev. Code §§ 2923.02 and 2923.03 prohibit the attempt to commit an offense and complicity in the commission of an offense.
   The government does not appear to contend that this conduct constitutes bribery under Ohio law.

[3]We think the district court erred as well in its conclusion that the Hobbs Act charge contained in Count 8 was a predicate act under Count 1.  The RICO conspiracy charged in Count 1 was explicitly and exclusively a conspiracy to commit predicate acts consisting of extortion and bribery under Ohio law.  This error, we conclude, is harmless as well.

immaterial to Saadey's conviction. The material question is whether a prosecution for RICO conspiracy is time-barred in the absence of proof of an overt or predicate act within the five-year limitations period.

This circuit has held that a RICO conspiracy offense is complete, for purposes of determining when the five-year statutory period begins to run, "when the purposes of the conspiracy have either been accomplished or abandoned." *United States v. Tocco*, 200 F.3d 401, 425 n.9 (6th Cir. 2000) (quoting, *United States v. Salerno*, 868 F.2d 524, 534 (2d Cir. 1989)). In *Tocco*, we noted that the defendant had demonstrated neither that the purposes of the conspiracy had been accomplished nor that he had abandoned or withdrawn from the conspiracy more than five years prior to the commencement of the prosecution. *Id.* Other circuits have applied in RICO conspiracy cases the general rule that "the conspiracy is presumed to exist until there has been an affirmative showing that it has been terminated." *United States v. Starrett*, 55 F.3d 1525, 1550 (11th Cir. 1995) (citing *United States v. Wong*, 40 F.3d 1347, 1367 (2d Cir. 1994)) (holding that a defendant is liable for participation in a RICO conspiracy for predicate acts the separate prosecution of which would be time-barred, so long as that defendant has not withdrawn from the conspiracy during the limitations period) and *United States v. Torres Lopez*, 851 F.2d 520, 525 (1st Cir. 1988) (holding that a RICO conspiracy prosecution was not time-barred, even where the defendant had not committed any predicate act within the five-year limitations period, because "there is no suggestion that the defendant withdrew from the alleged conspiracy at any time.")).

In the case before us today, Saadey did not raise as an affirmative defense that he had abandoned or withdrawn from the conspiracy at any time, *see United States v. Rogers*, 118 F.3d 466, 474 (6th Cir. 1997), nor has he raised abandonment or withdrawal on appeal. Neither has he pointed to evidence in the record that would demonstrate that the purposes of the conspiracy had been accomplished and the conspiracy terminated more than five years prior to the date that the indictment issued. In light of the Supreme Court's determination in *Salinas* that a conviction under 18 U.S.C. § 1962(d) does not require that any overt act have been committed, we conclude that, in the absence of evidence that the conspiracy had terminated or that Saadey had abandoned or withdrawn from it more than five years prior to this indictment, this prosecution is not time-barred. Accordingly, we must affirm Saadey's conviction on Count 1.

## III.

### A.  Defendant's Motion to Sever Counts 17-21 of the Superceding Indictment

This Court reviews a district court's severance ruling only for an abuse of discretion. *United States v. Carnes*, 309 F.3d 950, 957 (6th Cir. 2002). Saadey argues that the district court abused its discretion by failing to sever the counts pertaining to his filing false credit applications. In particular, Saadey contends that (1) the government failed to show that these counts were in any way related to the other counts in the indictment; and (2) he was prejudiced at trial because the jury was improperly turned against him due to the evidence of his guilt for unrelated offenses. We find no merit in either of Saadey's arguments.

"Foremost among the []circumstances [relevant to a motion to sever] is a 'balancing of the interest of the public in avoiding a multiplicity of litigation.'" *United States v. Wirsing*, 719 F.2d 859, 864-65 (6th Cir. 1983). Saadey's false credit applications, while not necessarily linked to his racketeering offenses, were not unrelated to the charges of filing false tax returns contained in Counts 14 through 16 of the Superceding Indictment. Because the credit application counts contained financial figures that were materially different from those reported on his tax returns, joinder of the tax counts with the false credit application counts was appropriate. *United States v. Bibby*, 752 F.2d 1116, 1121 (6th Cir. 1985) ("It is appropriate to combine tax charges against one defendant with fraud charges against that same defendant . . . . Failure to report the income from an illegal activity is an act which does arise directly out of the common enterprise because concealment of ill-gotten gain is an integral part of assuring the success of that illegal activity."); *see also United States v. Box*, 50 F.3d 345, 357-58 (5th Cir. 1995); *United States v. Hogan*, 886 F.2d 1497, 1507 (7th Cir. 1989).

Furthermore, the government used overlapping financial evidence, including Saadey's inconsistent statements about his income, to prove both the tax and the fraud counts. Tax and related counts covering the same time period and involving the same evidence are properly joined. *Bibby*, 752 F.2d at 1121. Judicial economy therefore dictates that multiple counts with overlapping proof of a common scheme to defraud be joined together. *United States v. Frost*, 125 F.3d 346, 390 (6th Cir. 1997).

In order to prevail on a motion for severance, a defendant must show compelling, specific, and actual prejudice from a court's refusal to grant the motion to sever. *See United States v. Sherlin*, 67 F.3d 1208, 1215 (6th Cir. 1995). Saadey has not met this burden. He alludes to the cumulative effect of the evidence on the jurors, and concludes that the jury may have found him "guilty of one crime and then improperly [found] him guilty of another crime merely because of his criminal disposition." But he provides no evidence to support this assertion, and an unproven assertion is not compelling evidence of actual prejudice.

Finally, Saadey claims prejudice because he was unable to testify in his own defense on the false credit application charges without damaging his credibility and waiving his Fifth Amendment right against self-incrimination on the RICO counts. He does not explain, however, how testifying about the credit charges would violate his right against self-incrimination on the RICO charges, particularly in light of his own assertion that "the unrelated credit charges [] had nothing to do with the alleged conspiracy." Saadey has presented no evidence of compelling, specific, and actual prejudice from the district court's refusal to sever Counts 17-21. The district court did not abuse its discretion in denying Saadey's motion.

## B. The Admission of Defendant's False Credit Applications Into Evidence and the District Court's Permitting the Jurors to Make Lay Handwriting Comparisons with Defendant's Known Signature

Saadey claims that the district court erred in admitting Saadey's false credit applications into evidence and in permitting the jurors to make lay handwriting comparisons with Saadey's known signature on his false tax returns. This Court reviews the district court's evidentiary rulings for an abuse of discretion. *General Electric Co. v. Joiner*, 522 U.S. 136, 141 (1997).

The crux of Saadey's argument is that the government failed to authenticate the credit applications before admitting them into evidence. Under FED. R. EVID. 901(a), a document is admissible only after sufficient evidence is presented to support a finding that the document is in fact what it purports to be. Saadey emphasizes that the government failed to call any witnesses to testify that the signature on the applications was in fact his. As the district court noted in overruling Saadey's objection, however, the federal rule permits the trier of fact to compare documents with other documents which have been authenticated. Under FED. R. EVID. 901(b)(3), a lay person can identify and compare signatures.

The district court relied in part on the Fourth Circuit's reasoning in *United States v. Dozie*, 27 F.3d 95 (4th Cir. 1994). In that case, the court determined that because of Rule 901(b)(3), expert opinion on handwriting was unnecessary, and where one document had been properly authenticated, the jury could compare the signature on that document with the signature on another:

> Under FED. R. EVID. 901(b)(3), expert opinion on handwriting is not necessary. The authenticity of the tax return related to count 2 was sufficiently established, and it was permissible for the jury to compare the handwriting on the count 2 tax return with that on the count 3 return. That Chudi prepared the count 3 documents and submitted them to the Hartford Insurance Company is clearly a legitimate inference, and this evidence is sufficient to support the verdicts.

*Id.* at 98.

The *Dozie* court's reasoning is sound. In this case, the government presented known handwriting material—the tax forms that Saadey admitted contained his signature. The credit applications, which contained Saadey's name, address, and social security number, also contained signatures. The district court

did not abuse its discretion by allowing the jury, pursuant to Rule 901(b)(3), to make lay comparisons between the signatures on each of these documents and Saadey's signature on the tax forms.

## C. The Exclusion of Evidence of the Investigating Agent's Motives, Where that Agent Did Not Testify at Trial

Saadey next claims that the district court erred in ruling that evidence which purportedly attacked the good faith of an investigator was irrelevant and therefore inadmissable. We review the district court's rulings on exclusion of evidence for an abuse of discretion. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1991); *General Electric*, 522 U.S. at 141.

Saadey sought to introduce evidence that FBI Special Agent Anthony Speranza had a sexual relationship with the wife of a government witness, and that during the course of this relationship, Speranza had indicated his personal motivation to gather evidence against Saadey. Debbie Campbell, the wife of Jack Campbell, a defense attorney who was involved in Saadey's bribery schemes, testified under seal that she was romantically involved with Agent Speranza, and that Speranza had indicated some personal animus toward Saadey. Agent Speranza himself acknowledged that he had made highly derogatory references to Saadey.

The district court ruled that evidence of the investigating agent's personal animus toward Saadey was irrelevant and therefore inadmissable because Agent Speranza did not testify at trial and because Agent Speranza's motives were irrelevant to Saadey's guilt. Had Speranza testified at trial, this evidence would have been admissible to impeach his credibility. He did not testify, and his credibility is not an issue. Saadey has failed to demonstrate how evidence of Speranza's motives could be relevant under FED. R. EVID. 401, or how such evidence could possibly be more probative than prejudicial under Rule 403. We find no abuse of discretion here.

## D. The imposition of a One-level Upward Departure

Saadey's last contention is that the district court erred by imposing a one-level upward departure under U.S.S.G. § 2C1.1. This Court reviews a district court's decision to depart from the Guidelines sentencing range for abuse of discretion. *United States v. Chance*, 306 F.3d 356, 393 (6th Cir. 2002); *United States v. Barber*, 200 F.3d 908, 911 (6th Cir. 2000).

Initially, we note that the guidelines section under which the one-level increase Saadey complains is not readily apparent from the record. According to the judgment of conviction and sentence, the court granted the motion of the government for an upward departure of one offense level pursuant to U.S.S.G. § 5K2.7. The government's motion for departure, however, sought an upward departure under U.S.S.G. § 2C1.2, Application Note 5, for conduct that "was part of a systematic or pervasive corruption of a governmental function, process, or office that may cause loss of public confidence in government." This language does not appear in any Application Note for § 2C1.2, but, rather, is in Application Note 5 to § 2C1.1.

Although an upward departure under § 5K2.7 might be appropriate in this case, we note that this section explicitly cautions that such a departure "ordinarily would not be justified when the offense of conviction is an offense such as bribery or obstruction of justice; in such cases interference with a governmental function is inherent in the offense, and unless the circumstances are unusual the guidelines will reflect the appropriate punishment for such interference." U.S.S.G. § 5K2.7. Here, of course, the offense of conviction warranting the offense level increase is RICO conspiracy, not itself a conviction for bribery or obstruction, but involving bribery as the predicate offense.

On the other hand, Section 2C1.1, Application Note 5 provides that an upward departure may be warranted "[w]here the court finds that the defendant's conduct was part of a systematic or pervasive corruption of a governmental function, process, or office that may cause loss of public confidence in

government." The district court specifically found that the public had lost confidence in the Mahoning County justice system, and that Saadey's conduct directly contributed to that loss of public confidence. "He abused the public trust that the citizens [] put in their government when they elected Mr. Philomena, and when they elected the judges . . . . [T]his defendant helped to undermine public confidence in the government." The court specifically made the types of factual findings that we noted in *Chance* are necessary for an increase in offense level under Section 2C1.1, Application Note 5. *See Chance*, 306 F.3d at 395-96.

Saadey argues that his conduct falls within the "heartland of cases which the RICO statute [was] intended to address," and that any enhanced punishment has therefore already been incorporated into his pre-departure sentencing range. We are not inclined to agree, and we think that the upward departure was within the bounds of Application Note 5. However, because we have reversed Saadey's conviction on Count 8 and must therefore remand this case for resentencing, the district court will have the opportunity to revisit this issue, and to clarify the basis upon which this base level increase was imposed.

## IV. CONCLUSION

Accordingly, we **REVERSE** Saadey's conviction on Count 8 of the Superceding Indictment and we **REMAND** to the district court for resentencing. We **AFFIRM** the judgment of the district court in all other respects.