**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Marilyn Kelly

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

FILED JULY 9, 2009

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                    No. 135271

CARLETUS LASHAWN WILLIAMS,

        Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH.

CORRIGAN, J.

In this criminal case, we consider the joinder and severance of charges against a single criminal defendant under our court rules. MCR 6.120(A) and (B) establish when a court may join offenses charged in two or more informations against a single defendant and when a court must sever offenses charged in a single information against a single defendant. This Court first adopted MCR 6.120 on October 1, 1989. Before adopting MCR 6.120, however, we had ruled 12 years earlier that two drug sales to the same undercover agent within 12 days could not be joined because "[t]he two informations charged distinct and separate offenses, and [the defendant] was entitled to a separate trial on each offense." *People v Tobey*, 401 Mich 141, 145; 257 NW2d 537 (1977).

We conclude that the provisions of MCR 6.120 superseded *Tobey*. The unambiguous language of MCR 6.120 permits joinder in a greater range of circumstances than did *Tobey*. In this case, the trial court correctly applied the plain language of the court rule when it determined that defendant's offenses were "related." Accordingly, we affirm defendant's convictions.

## I. FACTS AND PROCEDURAL HISTORY

The Court of Appeals summarized the facts of this case as follows:

> Officers from the Oakland County Narcotics Enforcement Team executed a search warrant at a Motel 6 motel room on November 4, 2004. They knocked and announced their presence, and they forced the door open when they received no response. As they entered, defendant, the sole occupant, was just walking out of the bathroom and the toilet was in mid-flush. A bag of suspected crack cocaine was caught in the drain and an officer fished it out. Another officer broke the toilet bowl and recovered one or more small rocks. In the room itself, the officers found some large chunks of suspected crack cocaine, several small rocks in individual "corner ties," a digital scale, a box of razor blades, a container of sandwich baggies, some individual baggies with missing corners, a pair of scissors, two handguns and ammunition, over $500 in cash, and a receipt showing that the room had been rented to defendant. The suspected narcotics weighed at least 50 grams and tested positive for cocaine.

> Pontiac police officers testified that they executed another search warrant at 510 Nevada on February 2, 2005. The officers saw defendant arrive in a 1994 Ford and enter the house shortly before the warrant was executed. The officers again knocked and announced their presence, then forced the door open when they received no response. Defendant and another person were in the living room. Defendant was seated in a chair with a brown bag in his lap. He was leaning down with his right hand extended toward the floor between the chair and the television set. He ignored orders to raise his hands. On the floor where defendant had been reaching, the officers found a plastic bag containing approximately 18 rocks of suspected cocaine. The bag in defendant's lap contained sandwich

2

baggies and a pair of scissors. A digital scale and a box of sandwich baggies were on top of the television, along with a set of keys that included a key to the 1994 Ford. Both inside the back of the television and on the floor behind it were empty baggies and used "corner ties" with cocaine residue. Defendant had over $1,000 in his wallet. Inside the trunk of the 1994 Ford, the officers found a handgun and two assault rifles. The suspected narcotics weighed just under ten grams and tested positive for cocaine.[1]

The prosecutor moved under MCR 6.120(A) and (B) to consolidate for a single jury trial the offenses charged as a result of defendant's November 4, 2004, and February 2, 2005, arrests. In the alternative, the prosecutor moved to introduce evidence of each offense in the other trial under MRE 404(b). Defendant objected to both motions. The trial court granted the prosecutor's motion for joinder, holding that the offenses were "related" under MCR 6.120(B) because "[b]oth of the acts that are involved here do appear to the Court to be parts of a single scheme or plan; namely, drug trafficking and therefore they would appear to be related offenses." The trial court further explained that "[t]he Court is concerned about the potential for prejudice, but the Court believes there actually is a greater risk of prejudice if we had separate trials and the Court would allow 404(b) even to be used in the form of the conduct of the offense that is not the subject of a particular trial."

With regard to the charges stemming from the November 2004 arrest, the jury convicted defendant of possession with intent to deliver 50 grams or more,

---

[1] *People v Williams*, unpublished opinion per curiam of the Court of Appeals, issued October 25, 2007 (Docket No. 266807), at 1-2.

but less than 450 grams, of cocaine, MCL 333.7401(2)(a)(*iii*), felon in possession of a firearm, MCL 750.224f, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. With regard to the February 2005 arrest, the jury convicted him of possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), being a felon in possession of a firearm, carrying a concealed weapon in a vehicle, MCL 750.227(1), and one count of felony-firearm.

In an unpublished opinion per curiam, the Court of Appeals affirmed. It held that the trial court did not err by concluding that the offenses were "related" under MCR 6.120(B). The Court explained:

> The offenses here were not discrete, unrelated sales. Rather, they indicated a single scheme or plan to earn money by selling cocaine. In both, defendant was found in possession of enough cocaine to indicate an intent to sell it, as well as the necessary equipment to prepare it for sale and weaponry to defend the operation. The evidence therefore indicated that both of defendant's offenses were connected parts of an ongoing scheme or plan to sell drugs.[2]

Defendant then applied for leave to appeal in this Court. We granted his application for leave and directed the parties to address "(1) whether the defendant was entitled to separate trials under MCR 6.120; (2) whether *People v Tobey*, 401

---

[2] *Williams*, *supra* at 2.

4

Mich 141 (1977), is consistent with MCR 6.120; and (3) if the joinder was erroneous, whether the error may be deemed harmless."[3]

## II. STANDARD OF REVIEW

Generally, this Court reviews questions of law de novo and factual findings for clear error. *People v McRae*, 469 Mich 704, 710; 678 NW2d 425 (2004); MCR 2.613(C). The interpretation of a court rule, like matters of statutory interpretation, is a question of law that we review de novo. *People v Petit*, 466 Mich 624, 627; 648 NW2d 193 (2002). To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute "related" offenses for which joinder is appropriate. Because this case presents a mixed question of fact and law, it is subject to both a clear error and a de novo standard of review.

Additionally, when this Court reviews preserved nonconstitutional errors, we consider the nature of the error and assess its effect in light of the weight and strength of the untainted evidence. MCL 769.26; *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999). Similarly, MCR 2.613(A) provides that "[a]n error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears

---

[3] *People v Williams*, 481 Mich 884 (2008).

5

to the court inconsistent with substantial justice." We recognize that both the statute and the court rule present "different articulations of the same idea." *People v Robinson*, 386 Mich 551, 562; 194 NW2d 709 (1972).

## III. ANALYSIS

The same legal principles that govern the construction and application of statutes apply to court rules. *In re KH*, 469 Mich 621, 628; 677 NW2d 800 (2004). When construing a court rule, we begin with its plain language; when that language is unambiguous, we must enforce the meaning expressed, without further judicial construction or interpretation. *Id*.

Defendant alleges that the trial court violated MCR 6.120. Defendant argues that his offenses do not constitute either "the same conduct" or "a series of connected acts or acts constituting part of a single scheme or plan," as the *Tobey* Court defined those terms. Defendant further contends that his interpretation of the court rule is consistent with a Court of Appeals decision in which the Court applied *Tobey*'s definitions of the relevant terms.[4] Because the offenses charged were "unrelated," defendant claims that he had an absolute right to severance upon his objection to the prosecutor's motion to consolidate under MCR 6.120(B).

---

[4] *People v Daughenbaugh*, 193 Mich App 506; 484 NW2d 690 (1992), mod in part and lv den in part 441 Mich 867 (1992).

6

At the time of defendant's trial, MCR 6.120(A) and (B) provided in relevant part:[5]

> (A) Permissive Joinder. An information or indictment may charge a single defendant with any two or more offenses. Each offense must be stated in a separate count. Two or more informations or indictments against a single defendant may be consolidated for a single trial.
>
> (B) Right of Severance; Unrelated Offenses. On the defendant's motion, the court must sever unrelated offenses for separate trials. For purposes of this rule, two offenses are related if they are based on
> (1) the same conduct, or
> (2) a series of connected acts or acts constituting part of a single scheme or plan.

The plain language of MCR 6.120 permits joinder if offenses are "related." Offenses are "related" if they comprise either "the same conduct" or "a series of connected acts or acts constituting part of a single scheme or plan." MCR 6.120(B)(1) and (2). Accordingly, the court rule then in effect unambiguously provided three potential bases on which joinder is permissible.

---

[5] The Court amended MCR 6.120 effective January 1, 2006. Currently, MCR 6.120(B)(1) states that:

> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on
>
> (a) the same conduct or transaction, or
>
> (b) a series of connected acts, or
>
> (c) a series of acts constituting parts of a single scheme or plan.

Because the trial court decided this issue before January 1, 2006, under the former rule, we analyze this case with the rule then in effect.

7

In this case, the record reflects that the trial court correctly applied the plain language of MCR 6.120 to the facts presented when it concluded that the offenses charged were "related." After hearing arguments from the parties, the trial court specifically addressed the language of MCR 6.120(A) and (B). The court concluded that the offenses charged in both cases reflect defendant's "single scheme or plan" of drug trafficking. MCR 6.120(B)(2). Consequently, defendant had no right to sever these "related" offenses. MCR 6.120(B).[6] The trial court noted that in light of the relevant facts, a single jury trial was appropriate and, further, the court stated that it would "be cautioning the jury that they need to find that both events have to meet the standard of proof beyond a reasonable doubt."

We conclude that the trial court did not violate the unambiguous language of MCR 6.120. The offenses charged were plainly "related" under MCR 6.120(B)(2). In both cases, defendant was engaged in a scheme to break down cocaine and package it for distribution. Evidence of acts constituting part of

---

[6] The dissent argues that MCR 6.120(B) "is mandatory and *requires* that unrelated offenses be severed upon a timely motion to sever." *Post* at 21 n 37. We agree that if the offenses charged were "unrelated," defendant would have a right to severance under MCR 6.120(B). In this case, however, the record reveals that the trial court analyzed the relevant facts and concluded that the charged offenses were "related"; therefore, defendant had no right to severance. Generally, a trial court's "ultimate ruling on a motion to sever is reviewed for an abuse of discretion." *People v Girard*, 269 Mich App 15, 17; 709 NW2d 229 (2005). Because the dissent cites no caselaw and advances no cogent argument to support its underlying assumption that the trial court abused its discretion, the dissent's repeated insistence that severance is mandatory for "unrelated" offenses is unavailing.

8

defendant's single scheme was found in both the motel room and the house at 510 Nevada. Even if one views defendant's first arrest in November and his second arrest in February as discrete moments in time, direct evidence indicated that he was engaging in the same particular conduct on those dates.[7] The charges stemming from both arrests were not "related" simply because they were "of the same or similar character."[8] Instead, the offenses charged were related because the evidence indicated that defendant engaged in ongoing acts constituting parts of his overall scheme or plan to package cocaine for distribution.[9] Accordingly, the trial court complied with what the language of MCR 6.120 unambiguously required.[10]

---

[7] Likening us to a magician, the dissent contends that our statement is "a semantic sleight of hand." *Post* at 10. Although we conclude that defendant's charged offenses constitute "part of a single scheme or plan" under MCR 6.120(B)(2), we nevertheless note that discussion of whether the charged offenses involved "the same conduct" is also relevant for a reviewing court to consider because it reflects an alternative definition of "related offenses" under MCR 6.120(B)(1).

[8] See 2 ABA Standards for Criminal Justice (2d ed), ch 13, p 11 ("Offenses committed at different times and places are not 'related' merely because they are of the same or similar character.").

[9] The dissent complains that "[n]othing in the record supports or even suggests that defendant's two arrests were anything more than two discrete occurrences of packaging illegal drugs." *Post* at 11 n 17. The dissent's concession that defendant's actions constituted two "occurrences of packaging illegal drugs" provides additional support for our conclusion that defendant's acts constituted parts of his scheme or plan to package cocaine for distribution.

[10] Although the trial court complied with the unambiguous language of MCR 6.120, the Court of Appeals construed the court rule too broadly. In our judgment, joinder may not be permitted if a reviewing court concludes that the only link to an ongoing scheme or plan is "to earn money" through some criminal enterprise.

Our interpretation of MCR 6.120 is reinforced by the analysis of the United States Court of Appeals for the Sixth Circuit in several cases addressing the analogous federal rules.[11] In *United States v Saadey*, 393 F3d 669 (CA 6, 2005), the court held that joinder of counts for filing false tax returns with counts for filing false credit applications against the defendant was appropriate "[b]ecause the credit application counts contained financial figures that were materially different from those reported on his tax returns . . . ." *Id*. at 678. The court concluded that the multiple counts revealed "a common scheme to defraud." *Id*. A second case involved a defendant charged with conspiracy to commit violent acts on the United States and its officers, in which the court had joined the defendant's drug-related and firearms-related counts. *United States v Graham*,

---

*Williams, supra* at 2. Moreover, in light of the myriad evidence indicating that defendant was engaged in an ongoing scheme or plan to package cocaine for distribution, whether his underlying motive was to earn money is immaterial.

[11] FR Crim P 8(a) provides that two or more offenses may be charged in the same indictment "if the offenses charged . . . are of the same or similar character or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."

FR Crim P 14(a) states that severance is proper if joinder of offenses would prejudice the defendant:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

275 F3d 490 (CA 6, 2001).[12] The district court ruled that, based on the grand jury's indictment, the conspiracy to manufacture marijuana was part of "a common scheme or plan" to sell drugs to finance violence. *Graham*, *supra* at 512. On appeal, the court agreed that joinder of the counts was proper, reaffirming the well-established principle that "'[w]hen the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate.'" *Id*., quoting *United States v Wirsing*, 719 F2d 859, 863 (CA 6, 1983). Similarly, in *United States v Jacobs*, 244 F3d 503, 507 (CA 6, 2001), the court held that the district court had not abused its discretion by denying the motion to sever charges arising from two separate incidents in which the defendant abducted his estranged wife.

---

[12] The dissent asserts that in *Graham, supra,* the court based its holding "on the motive underlying the defendant's perpetration of each offense . . . ." *Post* at 12-13. Moreover, the dissent contends that "the cases cited by the lead opinion all involve situations in which each joined offense was committed with a particular motive or goal underlying the defendant's conduct." *Post* at 13-14. In so doing, the dissent fails to explain why defendant's actions here do not reflect an underlying motive or particular goal each time that he was observed packaging cocaine for distribution. Indeed, in the seminal case used in LaFave, Criminal Procedure (3d ed), § 17.1(a), to illustrate the "common scheme or plan" aspect of the federal rule, the court held "that charges of bribery, tax evasion, and mail fraud were properly joined because they all were instances of the defendant using his public office for personal gain." *Id*. at 4, citing *United States v Barrett*, 505 F2d 1091 (CA 7, 1974); see also *United States v Fortenberry*, 914 F2d 671 (CA 5, 1990) (holding that car bombing and weapons charges were properly joined where all charges allegedly arose from defendant's attempt to exact revenge on persons involved in his divorce). Therefore, although the dissent attempts to distinguish cases in which the court permitted joinder of those offenses committed with the same motive, we conclude that the broad acceptance of a variety of underlying motives by our sister courts provides yet another basis to conclude that the charged offenses in this case were properly joined.

11

The court distinguished the defendant's appeal from another case "[b]ecause, as the district court properly concluded, both abductions were part of a common scheme, the counts in the indictment are factually intertwined . . . ." *Id*. The court concluded, "Here, even if the charges were tried separately, evidence from each crime would have been admissible in the trial of the other because of the common scheme or plan." *Id*. The admissibility of evidence in other trials is an important consideration because "[j]oinder of . . . other crimes cannot prejudice the defendant more than he would have been by the admissibility of the other evidence in a separate trial." *United States v Harris*, 635 F2d 526, 527 (CA 6, 1980).

Having determined that defendant was not entitled to separate trials under MCR 6.120, we next consider whether *Tobey* is consistent with MCR 6.120.[13] *Tobey*, which predated the enactment of MCR 6.120 by approximately 12 years, also analyzed the permissible circumstances for joinder. However, the *Tobey* Court took a much narrower view of the circumstances in which joinder may be appropriate than that set forth in MCR 6.120. This narrower view of *Tobey* can be seen when one compares *Tobey*'s original analysis of the defendant's conduct with

---

[13] The dissent asserts that our decision is inherently flawed because we have adopted "cart-before-the-horse reasoning" by analyzing whether defendant was entitled to separate trials before analyzing whether *Tobey* is consistent with MCR 6.120. *Post* at 2. In so doing, the dissent fails to mention that we have analyzed the issues before us in the same sequence set forth in our order granting defendant's application for leave and in the same sequence that the parties themselves addressed the issues. See *Williams*, *supra* 481 Mich at 884.

the language later enacted in MCR 6.120.[14] Because the differences between *Tobey* and MCR 6.120 cannot be reconciled without undermining the plain language of the court rule, we conclude that MCR 6.120 superseded *Tobey*. Consequently, courts should no longer view *Tobey* as dispositive on issues of joinder and severance.[15] Consistent with our decision, we also reject the analysis of *Daughenbaugh* in accordance with the plain language of MCR 6.120.[16]

---

[14] Compare MCR 6.120(B)(2) ("a series of connected acts or acts constituting part of a single scheme") with *Tobey, supra* at 153 ("The undercover police agent testified that he never gave Tobey his telephone number or address . . . . The officer stated that he 'always called down' any time he wished to see Tobey to make a purchase, and responded affirmatively to the question whether the sales and purchases were 'always initiated' by him."). Notably, the unambiguous language of MCR 6.120 does not require that a reviewing court consider the factors that the *Tobey* Court apparently found dispositive, including whether the undercover agent had always initiated the drug sales or whether the defendant had some means to locate the undercover agent.

[15] The staff comment to MCR 6.120 states that "[e]laboration on this standard may be found in *People v Tobey*, 401 Mich 141 (1977)." The staff comment erroneously implied that *Tobey* is entirely consistent with the unambiguous language of MCR 6.120. Moreover, a staff comment to the Michigan Court Rules is not binding authority. *People v Grove*, 455 Mich 439, 456; 566 NW2d 547 (1997). Because the staff comment should not be considered an authoritative construction of MCR 6.120, we only address the unambiguous language of the court rule and this Court's prior decision in *Tobey*. See MCR 1.101. Consequently, the dissent's reliance on the staff comment to buttress its argument that "*Tobey* is virtually identical to the language in MCR 6.120 and is in no way inconsistent" is misplaced. *Post* at 8.

[16] As we have discussed, MCR 6.120 superseded *Tobey* because the unambiguous language of the court rule cannot be reconciled with *Tobey*. Therefore, the Court of Appeals erred when it concluded that MCR 6.120 codified *Tobey*. *Daughenbaugh, supra* at 509. The dissent contends that *Daughenbaugh* should nevertheless be viewed as "persuasive authority" for the proposition that MCR 6.120 codified our earlier decision in *Tobey*. *Post* at 8. We reject the dissent's

13

In *Tobey*, the Court concluded that charges arising from two drug sales to the same undercover agent within 12 days were improperly joined because "[t]he two informations charged distinct and separate offenses, and Tobey was entitled to a separate trial on each offense." *Tobey*, *supra* at 145. Because MCR 6.120 did not yet exist, the *Tobey* Court's discussion of permissible circumstances for joinder relied on three primary sources. First, the Court quoted its earlier opinion in *People v Johns*, 336 Mich 617; 59 NW2d 20 (1953), which had noted that "'this Court has emphasized that the offenses charged in the several counts must arise out of substantially the same acts *committed at the same time*.'" *Tobey*, *supra* at 148-149, quoting *Johns*, *supra* at 623 (emphasis in *Tobey*). Second, the Court relied on *Blockburger v United States*, 284 US 299, 301-302; 52 S Ct 180; 76 L Ed 306 (1932), to support its conclusion that, for double jeopardy and joinder purposes, it would be inappropriate for consecutive sales of heroin made to the same person on different days to constitute one offense. *Tobey*, *supra* at 149-150. Third, the *Tobey* Court discussed the American Bar Association (ABA) Project on

---

reliance on obiter dictum from *Daughenbaugh* as persuasive authority. Additionally, we note that *Daughenbaugh* cited no authority and omitted any analysis of the plain language of MCR 6.120 in support of its conclusion. *Daughenbaugh, supra* at 509. Instead, the Court of Appeals held that the charged offenses were "unrelated" and that severance was mandatory under two of the three primary sources on which *Tobey* had relied. *Id*. at 509-510. Perplexingly, the dissent asserts that our analysis of these sources "is of questionable assistance," *post* at 2, but nonetheless describes the corresponding analysis in *Daughenbaugh* as "entitled to some weight." *Post* at 8 n 11.

14

Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance (Approved Draft, 1968). *Id.* at 150-153.

None of the sources discussed in *Tobey* can be reconciled with the unambiguous language of MCR 6.120. First, *Tobey* relied on *Johns* for the proposition that "the offenses charged in the several counts must arise out of substantially the same acts *committed at the same time*." *Tobey*, *supra* at 149 (quotation marks and citation omitted; emphasis in original).[17] Yet, *Johns* did not conclude that offenses must be "committed at the same time" in order for joinder to be appropriate. Instead, the Court described the general principle that

> where the several offenses charged, though distinct in point of law, yet spring out of substantially the same transaction, or are so connected in their facts as to make substantially parts of the same transaction, or connected series of facts, the defendant can not be prejudiced in his defense by the joinder, and the court will neither quash nor compel an election. [*Johns*, *supra* at 623.]

---

[17] Although *Tobey* referred to this language from *Johns,* as well as earlier caselaw that quoted such language approvingly, the dissent nevertheless insists that *Tobey* reached the exact opposite conclusion about temporal proximity "in the context of offenses committed as part of a single scheme." *Post* at 4 n 5. This claim, however, does not comport with *Tobey*'s discussion of *Johns*. *Tobey, supra* at 148-149, quoting *Johns*, *supra* at 623 ("'It is to be noted that this Court has emphasized that the offenses charged in the several counts must arise out of substantially the same acts *committed at the same time*.'"); *id.* at 152 ("[c]ounts charging Johns with maintainng [sic] a gaming room table and with keeping a place where gambling was permitted were joined. 'The acts committed . . . occurred within an hour and a half and out of substantially the same transaction.'"). The dissent, however, fails to acknowledge *Tobey*'s discussion of *Johns* and instead relies on the commentary accompanying the ABA Standards. See *Tobey*, *supra* at 152 n 15.

15

Moreover, the unambiguous language of MCR 6.120 does not mandate the existence of temporal proximity between several offenses.[18] Instead, MCR 6.120(B)(2) permits joinder of offenses that were not committed at the same time but nevertheless constitute "a series of connected acts or acts constituting part of a single scheme or plan."

*Tobey*'s reliance on *Blockburger* "for double jeopardy and joinder purposes" is similarly unavailing. Generally, joinder is a "discrete, nonconstitutional concept[] that should not be conflated with the constitutional double jeopardy protection." *People v Nutt*, 469 Mich 565, 592 n 28; 677 NW2d 1 (2004). In *Tobey*, however, the Court reasoned that, "[f]or double jeopardy and joinder purposes each sale is separate conduct, a separate act and transaction, and, as the Court of Appeals correctly noted, a separate and distinct criminal offense." *Tobey*, *supra* at 149. Additionally, *Tobey* quoted extensively from *Blockburger* to buttress its conclusion that "[w]hile Tobey's conduct in selling heroin on different days to the same person is substantially similar conduct, it is not the same conduct or act." *Id*. In so doing, *Tobey* conflated the constitutional double jeopardy protection with the nonconstitutional concept of joinder. Consequently, we find *Tobey*'s discussion of *Blockburger* unpersuasive.

---

[18] We agree with the dissent that multiple offenses may be "related" as part of a single scheme or plan despite a lack of temporal proximity. See *post* at 14 n 25.

16

*Tobey*'s discussion of the draft ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance (Approved Draft, 1968), refers to an earlier version. Soon after the Court decided *Tobey*, the ABA published revised standards.[19] These revised standards endeavored to "incorporate and extend the approach of the original standards."[20] Unlike the draft version on which *Tobey* relied, the revised ABA standards first introduced the concept of "related" and "unrelated" offenses.[21] When the Court adopted MCR 6.120 in 1989, it also used the framework of "related" and "unrelated" offenses. In contrast, *Tobey* made no mention of "related" or "unrelated" offenses. Instead, *Tobey* emphasized that the draft version permitted "joinder of offenses which 'are of the same or similar character', or which 'are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan'."[22] Both the revised standards and MCR 6.120, however, omitted any suggestion that offenses should be "of the same or similar character," as the draft

---

[19] See 2 ABA Standards for Criminal Justice (2d ed, ch 13).

[20] *Id.* at 6.

[21] *Id*. at 9-10. Specifically, Standard 13-1.2 provides that "[t]wo or more offenses are related offenses if they are based upon the same conduct, upon a single criminal episode, or upon a common plan." Moreover, Standard 13-1.3 provides that "[u]nrelated offenses are any offenses which are not 'related' offenses."

[22] *Tobey, supra* at 150, citing ABA Standards Relating to Joinder and Severance (Approved Draft, 1968), Standard 1.1.

ABA version had provided.[23]  The incongruities between the draft ABA version on which *Tobey* relied and the plain language of MCR 6.120 reinforce our conclusion that MCR 6.120 superseded *Tobey*.

Finally, we conclude that even if defendant successfully had established that the trial court erred by joining his two cases, any error would be harmless. Under MCL 769.26, a preserved, nonconstitutional error is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative. *Lukity*, *supra* at 495-496.  Similarly, MCR 2.613(A) provides that an error is not grounds for disturbing a judgment "unless refusal to take this action appears to the court inconsistent with substantial justice."

In this case, the evidence of each charged offense could have been introduced in the other trial under MRE 404(b).[24]  See, e.g., *People v Sabin (After*

---

[23] The dissent claims that "just as *Tobey* rejected connecting offenses solely on the basis that they are of 'the same or similar character,' MCR 6.120 omits that language from its definition of 'related' offenses."  *Post* at 6.  In so doing, however, the dissent fails to acknowledge that neither *Tobey* nor the draft ABA standards mentions "related" offenses at all.  See *Tobey, supra* at 150-153. Similarly, the dissent omits any discussion of the revised ABA standards, which, unlike the draft version, no longer permitted the joinder of offenses "'of the same or similar character, even if not part of a single scheme or plan.'"  *Id.* at 151 n 13, quoting Draft Standard 1.1.

[24] MRE 404(b) provides, in relevant part:

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other

18

*Remand)*, 463 Mich 43, 63-65; 614 NW2d 888 (2000).[25] Indeed, the prosecutor moved to allow MRE 404(b) evidence as an alternative to its motion to consolidate.[26] The trial court concluded that defendant would suffer greater prejudice if the court allowed evidence of the charged offenses in two separate trials under MRE 404(b) than if the court permitted joinder. Moreover, the trial court instructed the jury that it "must consider each crime separately in light of all of the evidence in this case" and further that it "may find the defendant guilty of all or any combination of these crimes or not guilty."

We note that, besides being consistent with this Court's caselaw, the trial court's conclusion is also consistent with that of the District of Columbia Court of Appeals, which has stated that "a misjoinder may be deemed harmless only if all

> purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

[25] See also *Krist v Foltz*, 804 F2d 944, 947-948 (CA 6, 1986) (agreeing with the Michigan Court of Appeals decision that while joinder of two robbery counts may have been improper, similarity in details of the two robberies and their closeness in time would have made evidence of one crime admissible at the separate trial of the other; therefore, the petitioner suffered no prejudice from his counsel's failure to move for severance).

[26] The dissent contends that evidence of each charged offense could have been introduced in the other trial under MRE 404(b) "[o]nly once such a [single] scheme has been shown." *Post* at 22. The dissent's argument, however, ignores the many bases on which MRE 404(b) permits evidence of other crimes, including "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident." See note 24 of this opinion.

19

or substantially all of the evidence of one offense would be admissible in a separate trial of the other." *Byrd v United States*, 551 A2d 96, 99 (DC, 1988) (citation and quotation marks omitted).[27] The United States Supreme Court also has stated, "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v Lane*, 474 US 438, 446, n 8; 106 S Ct 725; 88 L Ed 2d 814 (1986).

Therefore, even if the trial court had erred by joining the charges, we cannot conclude that such an error was outcome determinative.[28]

---

[27] The language of FR Crim P 8(a) closely tracks the language of MCR 6.120. Nevertheless, some differences exist between the rules, including the concept of misjoinder. Failure to meet the requirements of FR Crim P 8(a) constitutes misjoinder as a matter of law. *United States v Chavis*, 296 F3d 450, 456-457 (CA 6, 2002). Unlike the federal rule, however, 1A Gillespie, Michigan Criminal Law & Procedure (2d ed), § 17:36, pp 227-228, states:

> Where two distinct offenses were not committed at the same time, or were committed on different days,[11] or where the first was committed before a second and separate offense was committed,[12] and they cannot be shown by the same evidence, they nonetheless can be joined in the same information, there being no such thing as misjoinder of offenses in Michigan.[13]

[11] *People v. Dupree,* 175 Mich. 632, 141 N.W. 672 (1913).

[12] *People v. Goulette,* 82 Mich. 36, 45 N.W. 1124 (1890).

[13] MCR 6.120(A).

[28] Our conclusion is also consistent with a recent case denying an application for a writ of habeas corpus, in relevant part because the petitioner was not prejudiced by the joinder of four counts of second-degree criminal sexual conduct, MCL

20

IV. FURTHER RESPONSE TO CHIEF JUSTICE KELLY'S DISSENT

Chief Justice Kelly asserts that we have "implicitly" incorporated "same or similar character" language into MCR 6.120 "by denying severance of offenses that are of the same or similar character under the misnomer of a single scheme or plan." *Post* at 17. Not only does Chief Justice Kelly fail to adequately explain how we have implicitly read language into the court rule, she also ignores our explicit statement concerning "same or similar character" offenses. See *supra* at 8-9. Moreover, the plain language of MCR 6.120 does not permit the joinder of those offenses that are only "of the same or similar character." Accordingly, we reject Chief Justice Kelly's assertion. Our analysis begins with the plain language of the court rule and enforces the meaning expressed, without further judicial construction or interpretation. See *In re KH*, *supra* at 628.

Chief Justice Kelly contends that "[o]ther jurisdictions with similar court rules have correctly rejected" interpretations consistent with our interpretation of "single scheme or plan." *Post* at 14 n 25. She further argues that many jurisdictions "consider a finding of a common motive or goal to be a precondition

---

750.520c(1)(a). *Couturier v Vasbinder,* __ F Supp __; 2008 WL 4613055 (ED Mich, 2008). In *Couturier*, the petitioner allegedly engaged in sexual contact with three first-grade students while the students sat on his lap. The district court concluded that the "[p]etitioner was not prejudiced by the joinder of the charges, because both the trial court and the Michigan Court of Appeals found that each of the charges was admissible under M.R.E. 404(b) against the other charges to show that petitioner had a 'plan, scheme, or system' to sexually assault the different victims."

21

for establishing a single or common scheme or plan under the joinder and severance rules." *Post* at 14 n 25. In so doing, Chief Justice Kelly again presupposes that defendant's actions do not reflect a common motive or particular goal each time that he was observed packaging cocaine for distribution. To buttress her argument, Chief Justice Kelly cites three cases that do not advance her position.

In *State v Denton*, 149 SW3d 1 (Tenn, 2004), for example, the Tennessee Supreme Court explained the unique rubric developed through that state's court rules and caselaw to address joinder and severance issues. See *Denton*, *supra* at 12-13. Although Chief Justice Kelly acknowledges that Tenn R Crim P 14(b)(1) and MCR 6.120 differ, she asserts that any differences between the two rules are irrelevant because *Denton* "interpreted the common scheme or plan clause, not the evidentiary admissibility question." *Post* at 14 n 25. We reject Chief Justice Kelly's flawed assertion that the common scheme or plan clause can be isolated from the evidentiary admissibility clause because the clauses are compound propositions. Under Tenn R Crim P 14(b)(1), a defendant has the right to severance unless the offenses charged are "part of a common scheme or plan *and the evidence of one would be admissible in the trial of the others*." Indeed, this latter conjunctive requirement, which is entirely absent in MCR 6.120, functions

22

as the primary inquiry in Tennessee.[29]  The Tennessee Supreme Court thus explained that, "in addition to showing that the offenses are part of a common scheme or plan, there is also a question of evidentiary admissibility that must be addressed." *Denton*, *supra* at 13.[30]  Because of these differences, we question how much value, if any, should be assigned to Chief Justice Kelly's repeated invocation of *Denton* and Tenn R Crim P 14(b)(1) throughout her dissent.

Additionally, in *State v McCrary*, 621 SW2d 266 (Mo, 1981), the Missouri Supreme Court found no abuse of discretion in the trial court's refusal to sever the offenses charged against the defendant when the offenses revealed "ample evidence of the existence of a plan of harassment and revenge aimed at the [defendant's former partner and her new] family."  *McCrary*, *supra* at 271-272. The Missouri Supreme Court thus upheld the joinder of offenses against the defendant for three discrete occurrences, including carrying a concealed weapon

---

[29] See *State v Burchfield*, 664 SW2d 284, 286 (Tenn, 1984) ("The primary inquiry into whether a severance should have been granted under Rule 14 is whether the evidence of one crime would be admissible in the trial of the other if the two counts of indictment had been severed.").

[30] Three types of evidence showing a common scheme or plan exist in Tennessee:

> (1) offenses that reveal a distinctive design or are so similar as to constitute "signature" crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction."  [*Denton, supra* at 13, citing *State v Shirley*, 6 SW3d 243, 248 (Tenn, 1999).]

on March 12, 1978, an assault on November 16, 1978, and a firebombing on March 8, 1979. *Id*. at 271.

Similarly, in *State v Oetken*, 613 NW2d 679, 688 (Iowa, 2000), the defendant argued that his trial counsel was ineffective because his attorney did not move to sever two burglary charges that defendant asserted were not part of "common scheme or plan." The Iowa Supreme Court disagreed, concluding that sufficient evidence supported the existence of a common scheme or plan, where the defendant "traveled through the rural countryside in search of homes that were unoccupied during traditional work hours, he knocked to ascertain the abodes were indeed vacant, broke and entered the premises through the rear doors, and proceeded to steal small portable objects such as TVs, VCRs, and guns." *Id*. at 699. The Iowa Supreme Court has affirmed its interpretation of what constitutes a "common scheme or plan" in more recent decisions as well.[31] Indeed, the analysis in these cases does not justify Chief Justice Kelly's reliance on them.

Moreover, several recent decisions reflect that other jurisdictions with similar court rules have adopted interpretations consistent with ours. The Mississippi Supreme Court has held that a "common scheme or plan" existed when the defendant was charged with three counts of forging prescriptions

---

[31] See *State v Elston*, 735 NW2d 196, 199 (Iowa, 2007) (concluding that the charges against the defendant were part of a "common scheme or plan" even though "the temporal proximity of the alleged indecent contact and sexual exploitation offenses was not close and the modus operandi allegedly employed by [the defendant] was dissimilar.").

involving two different pharmacists over a five month period. See *Rushing v State*, 911 So 2d 526, 536 (Miss, 2005) ("Succinctly stated, these counts involve too many similar factors when viewed together, to be anything but clearly linked and part of the same common scheme or plan."). Similarly, the Wyoming Supreme Court has held that the trial court did not abuse its discretion in refusing to sever a first-degree attempted sexual assault charge from attempted first-degree sexual assault charges involving a different victim. *Lessard v State*, 158 P3d 698, 704 (Wy, 2007). The court reasoned that the charged offenses constituted parts of a "single scheme or plan" even though "the criminal acts occurred at different locations and against different victims . . . ." *Id.* The Vermont Supreme Court also rejected the argument that because the charged offenses were separated in time, they cannot constitute a "common plan or scheme," explaining that "there is no hard-and-fast rule regarding time limits, and . . . the necessary proximity must vary with the circumstances." *State v Willis*, 181 Vt 170, 181; 915 A 2d 208 (2006) (citation and quotation marks omitted). Moreover, the Massachusetts Supreme Court affirmed a trial court decision to join four counts of aggravated rape and murder, stating that "the evidence supported a finding of 'a common plan by the defendant to prey upon similarly situated cocaine-addicted women for sexual gratification . . . .'" *Commonwealth v Gaynor*, 443 Mass 245, 259-260; 820 NE2d 233 (2005). In light of these decisions, we reject the view that our interpretation of the court rule somehow deviates from the interpretation of other jurisdictions concerning analogous rules.

## V. CONCLUSION

The trial court correctly applied the unambiguous language of MCR 6.120(A) and (B) in determining that the offenses in this case were "related" and consequently that joinder was appropriate. We further conclude that MCR 6.120 superseded the Court's earlier decision in *Tobey* and, therefore, courts should no longer view *Tobey* as dispositive regarding issues of joinder and severance against a single criminal defendant. Instead, courts must give effect to the plain language of the court rule. Accordingly, we affirm defendant's convictions.

Maura D. Corrigan
Elizabeth A. Weaver (except for part IV)
Robert P. Young, Jr.
Stephen J. Markman

26

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v                                                    No. 135271

CARLETUS LASHAWN WILLIAMS,

Defendant-Appellant.

_____

WEAVER, J. (*concurring*).

I concur in all except part IV of Justice Corrigan's opinion.


Elizabeth A. Weaver

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                       No. 135271

CARLETUS LASHAWN WILLIAMS,

      Defendant-Appellant.

_____

KELLY, C.J. (*dissenting*).

      I respectfully dissent. The majority erroneously concludes that MCR 6.120 superseded *People v Tobey*.[1] I disagree because the court rule and *Tobey* can be reconciled. Moreover, in rejecting *Tobey*, the opinion offers no persuasive reason why MCR 6.120 does not require that defendant's alleged offenses be severed for trial. I therefore disagree with its analysis and conclusions. The offenses should have been separately tried, and the failure to sever them was not harmless error. Therefore, I would reverse the judgment of the Court of Appeals.

      There are three flaws in the majority's analytical approach. *Tobey* and MCR 6.120 are currently the controlling authority on joinder and severance. Thus, I believe the appropriate initial question for the Court is whether the two standards for joinder and severance are reconcilable.

_____

[1] *People v Tobey,* 401 Mich 141; 257 NW2d 537 (1977).

However, the starting point for the majority's analysis is its own determination that the offenses in this case were "related" under MCR 6.120. Only then does it proceed to determine whether *Tobey* is consistent with the court rule. This cart-before-the-horse reasoning certainly makes it easier to conclude that the two standards are irreconcilable, given that *Tobey* explicitly held that essentially the same offenses were *not* properly joined. But this approach prejudges the central question at issue.

Second, the majority never compares the language of *Tobey* with the language of MCR 6.120. Yet it concludes that the language of *Tobey* is inconsistent with the "plain language" of MCR 6.120.[2]

---

[2] The majority evades this failure to compare the relevant language by comparing MCR 6.120(B)(2) and the defendant's conduct in *Tobey*. *Ante* at 12-13 and n 15. This is not the same as comparing the *standards* from the two cases. Moreover, it is immensely unhelpful to the majority's argument that "the unambiguous language of MCR 6.120 does not require that a reviewing court consider the factors that the *Tobey* Court apparently found dispositive[.]" *Ante* at 13 n 15. MCR 6.120 does not have *any* "factors" or describe *any* factual circumstances to which it does or does not apply. Therefore, the fact that MCR 6.120 does not require a reviewing court to consider "whether the undercover agent had always initiated the drug sales" is irrelevant.

Despite its failure to compare the language of *Tobey* with MCR 6.120, the majority confidently asserts that "the *Tobey* Court took a much narrower view of the circumstances in which joinder may be appropriate," *ante* at 12, and that "the differences between *Tobey* and MCR 6.120 cannot be reconciled without undermining the plain language of the rule," *ante* at 13. It reaches these conclusions without ever comparing the pertinent language of *Tobey* and MCR 6.120.

Third, the majority engages in lengthy and largely irrelevant criticism of the language in the authority that *Tobey* relies on to support its holding. This analysis is of questionable assistance in determining whether the two standards can be reconciled because it ignores the language of *Tobey*'s actual holding.

Therefore, the majority provides little basis for its conclusion that *Tobey* is irreconcilable with MCR 6.120. The opinion's often reiterated conclusion that *Tobey* is inconsistent with the "unambiguous language" of MCR 6.120 does not become more persuasive through repetition.

### I. MCR 6.120 AND *TOBEY* ARE RECONCILABLE AND CONSISTENT WITH ONE ANOTHER

Any meaningful analysis of whether *Tobey* is consistent with MCR 6.120 requires the answers to two key questions. First, for joinder and severance purposes, what relationship must exist between the charged criminal offenses? Second, under what circumstances is joinder allowed or severance mandated? If the answers to these questions are consistent under both a *Tobey* analysis and an MCR 6.120 analysis, the two can be applied harmoniously. I will address each of the questions separately.

3

A.  *Definition of "Related" Offenses*[3]

The majority's attempt to distinguish the language of MCR 6.120 from the authority cited in *Tobey* ignores *Tobey*'s central holding.  Certainly, some of the authority on which *Tobey* relies quotes language that differs from the language of the court rule.[4]  However, *Tobey*'s holding did not incorporate any language from those sources that is inconsistent with the definition of "related" offenses in MCR 6.120.[5]

---

[3] The majority observed that *Tobey* did not use the terms "related" or "unrelated" to modify "offenses."  *Ante* at 17.  We note that the joinder and severance standards from *Tobey* and MCR 6.120 are mutually consistent, and that is the fact more worthy of observation.  See Part I(A), Part I(B), and note 7 of this opinion.

[4] The majority addresses *Tobey*'s citation of *People v Johns*, 336 Mich 617; 59 NW2d 20 (1953), *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932), and the American Bar Association (ABA) Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance (Approved Draft, 1968).

[5] Contrary to the majority's implication, *Tobey* did not "mandate the existence of temporal proximity between several offenses."  *Ante* at 16.  Rather, *Tobey* simply stated that, when a defendant commits separate offenses at different times, joinder of the separate offenses for trial is permitted only under certain circumstances.  When MCR 6.120 was enacted, it defined those circumstances as "related" offenses, using language virtually identical to *Tobey*'s definition.

The majority opines that this claim does not comport with the *Tobey* Court's discussion of *Johns*.  *Ante* at 13 n 15.  This argument is misguided because the *Tobey* Court concluded that *Johns* involved "a series of connected acts," not a single scheme or plan.  *Tobey*, *supra* at 152.  In fact, *Tobey* said exactly the opposite in the context of offenses committed as part of a single scheme.  *Tobey*, *supra* at 152 n 15 ("joinder is allowed for offenses which are part of a single scheme, *even if considerable time passes between them*.") (emphasis added).

The majority similarly rejects as "unpersuasive" *Tobey*'s conclusion that "each sale is separate conduct, a separate act and transaction, and . . . a separate

4

The key portion of the *Tobey* opinion states:

> We adhere again to our earlier precedents and hold: a judge must sever two or more offenses when the offenses have been joined for trial solely on the ground that they are of the "same or similar character" and the defendant files a timely motion for severance objecting to the joinder . . . a judge has no discretion to permit the joinder for trial of separate offenses committed at different times *unless the offenses "are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan."*[6]

*Tobey* therefore held that joinder is appropriate when charged offenses are of the same or similar character, but the charges must be severed if a timely motion for severance is filed. *Tobey* also held that offenses cannot be joined unless they are based on (1) the same conduct, (2) a series of acts connected together, or (3) a series of acts constituting parts of a single scheme or plan. The language used in 1

---

and distinct criminal offense" because it relied on *Blockburger*. *Ante* at 16. It contends that *Tobey* erred because joinder and double jeopardy are distinct concepts, joinder being a nonconstitutional concept and double jeopardy being a constitutional protection. *Ante* at 16, quoting *People v Nutt*, 469 Mich 565, 592 n 28; 677 NW2d 1 (2004). Despite the majority's isolated quotation from *Nutt*, nothing in *Nutt* undermines *Tobey*'s holding. *Nutt* defined "same offense" using the "same elements" test from *Blockburger*. In doing so, *Nutt* rejected the broader "same transaction" test for defining what constitutes the same offense, overruling *People v White*, 390 Mich 245; 212 NW2d 222 (1973). The majority offers no explanation for why this narrow definition of the "same offense" for double jeopardy purposes should be defined more broadly in the joinder and severance context. I am not persuaded that a defendant's conduct should be considered "the same conduct" for joinder purposes when it simultaneously constitutes separate and distinct criminal offenses for double jeopardy purposes.

[6] *Tobey*, *supra* at 153 (citations omitted; emphasis added).

through 3 is virtually identical to the language used in MCR 6.120 when it defines what constitutes a "related" offense.[7]

Moreover, just as *Tobey* rejected connecting offenses solely on the basis that they are of "the same or similar character," MCR 6.120 omits that language from its definition of "related" offenses.[8] Therefore, the court rule's definition of "related" offenses requires the same connection between criminal offenses for joinder and severance purposes that *Tobey* did.

## B. *Negative Joinder and Affirmative Right to Severance*

The second question in the analysis is whether *Tobey* and MCR 6.120 allow joinder and mandate severance of offenses in a manner consistent with one another. MCR 6.120 permits joinder of offenses under any circumstances, which *Tobey* did not. However, MCR 6.120 also requires severance of "unrelated" offenses upon a defendant's timely motion for severance. As discussed

---

[7] I note that the standards need not be "identical" to be consistent with one another. Nevertheless, an illustration of the very minor differences between the two standards seems appropriate. These differences are inconsequential, as can be seen below:

*Tobey*: "based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan."

MCR 6.120(B): "based on the same conduct, or a series of connected acts or acts constituting part of a single scheme or plan."

[8] Therefore, contrary to the contention of the majority, the fact that MCR 6.120 omits any reference to conduct of the "same or similar character" in its definition of related offenses supports my position. The Michigan rule's definition of related offenses is significantly narrower than that of the federal rule.

previously, MCR 6.120 defined "related" offenses using language virtually identical to that used in *Tobey*.

Thus, the sole substantive difference between *Tobey* and MCR 6.120 concerns whether joinder of offenses is allowed in the first instance. But where, as in the case before us, a defendant makes a timely motion for severance, this distinction makes no practical difference and does not render the two irreconcilable.[9]

C. *The Staff Comment to MCR 6.120 and* Daughenbaugh

Finally, I note that the staff comment to MCR 6.120 states that "[t]his provision is consistent with Michigan law" and then cites *Tobey*. In *People v*

---

[9] Both *Tobey* and the court rule require that offenses must either not be joined or must be severed using virtually identical language to define "related" offenses. *Tobey* does not allow unrelated offenses to be joined in the first place. MCR 6.120 simply rephrases the negative joinder rule from *Tobey* as an affirmative right to severance, allowing unrelated offenses to be joined, but making severance mandatory if the defendant objects. Whether the charges are joined and then severed, or never joined in the first place, is irrelevant here. Defendant made a timely motion for severance, which is all that MCR 6.120 requires for mandatory severance of unrelated offenses.

The rewriting of the joinder and severance provisions to create an *affirmative* right to severance of unrelated offenses is significant for another reason. That an affirmative right to severance exists for defendants charged with unrelated offenses is significant when analyzing whether the erroneous denial of a motion to sever constitutes harmless error. See section on harmless error, *infra*.

The majority acknowledges that "some differences" exist between MCR 6.120 and the analogous federal rules, *ante* at 20 n 27. But it does not explain why its analysis is plausible given that the differences between MCR 6.120 and the federal rules are far more substantive than the differences between MCR 6.120 and *Tobey*.

*Daughenbaugh*, the Court of Appeals concluded that "[t]he court rule is a codification of the Supreme Court's earlier decision in [*Tobey*]."[10] The majority offers nothing to contradict this persuasive authority other than its unsupported assertion that *Tobey* is somehow inconsistent with the language of the court rule.[11] As noted earlier, the relevant language from *Tobey* is virtually identical to the language of MCR 6.120 and is in no way inconsistent.

## II. APPLICATION OF THE STANDARD FOR JOINDER AND SEVERANCE

Given that *Tobey* and MCR 6.120 are consistent with one another, they provide a uniform standard for evaluating when joinder or severance of criminal charges is appropriate. The majority correctly notes that, in deciding whether severance is required, the threshold question must be whether the charged offenses were "related." At the time of defendant's trial, MCR 6.120 defined a "related" offense as either "the same conduct" or "a series of connected acts or acts constituting part of a single scheme or plan."[12]

---

[10] *People v Daughenbaugh*, 193 Mich App 506, 509; 484 NW2d 690, mod in part 441 Mich 867 (1992).

[11] The majority also objects to my reference to this dictum from *Daughenbaugh* as "persuasive authority." *Ante* at 13 n 16. However, it offers no persuasive argument to warrant rejecting the staff comment and this language from *Daughenbaugh*. My analysis of *Tobey* and MCR 6.120 leads to the conclusion that the two provide consistent standards for joinder and severance. Since the staff comment and *Daughenbaugh* are also consistent with this conclusion, they are entitled to some weight in the analysis.

[12] MCR 6.120(B)(1)-(2). As the majority observes, although MCR 6.120 was amended effective January 1, 2006, this case was decided under the prior version

8

The lower courts both concluded that the offenses in this case were "related" under the "acts constituting part of a single scheme or plan" provision of MCR 6.120. The trial court ruled that the offenses were part of a single scheme or plan to commit "drug trafficking." The Court of Appeals concluded that the offenses were part of a single scheme or plan "to earn money by selling cocaine."[13]

The majority seemingly accepts the trial court's interpretation of what may comprise a single scheme or plan, while rejecting the Court of Appeals' interpretation of the provision as "too broad[]."[14] Yet the majority does not adopt the trial court's language that defendant had a single scheme or plan to engage in "drug trafficking." Instead, it concludes, similarly, that the offenses were related because defendant had a single scheme or plan "to package cocaine for distribution."[15]

of the rule and must be analyzed accordingly. The 2006 amendment did not significantly change the language defining "related" offenses.

[13] *People v Williams*, unpublished opinion per curiam of the Court of Appeals, issued October 25, 2007 (Docket No. 266807), at 2.

[14] *Ante* at 9 n 10.

[15] *Ante* at 9. The majority determines that the charged offenses were "plainly 'related'" as part of an overall scheme or plan and therefore were properly joined. *Ante* at 8. Yet it makes this determination in spite of several contradictory conclusions. First, it rejects both the trial court's and the Court of Appeals' bases for finding a "single scheme or plan." See *ante* at 9. Second, it concludes that the Court of Appeals construed the "single scheme or plan" language too broadly in finding an ongoing scheme to "'earn money' through some criminal enterprise." *Ante* at 9 n 10. Finally, despite these contradictions, it chastises the dissent for not

In doing so, the majority performs a semantic sleight of hand. It first observes that "direct evidence indicated that [defendant] was engaging in the *same particular conduct* on those dates."[16] Thus, it purports to agree with the lower courts that defendant's conduct constituted a single scheme or plan.

However, the majority actually places what it considers the "same particular conduct" under the guise of the "single scheme or plan" provision of MCR 6.120.[17] As will be discussed later, there is no basis for the majority's

"support[ing] its underlying assumption that the trial court abused its discretion" in finding that the offenses were "related." *Ante* at 8 n 6. It appears that the majority itself believes that the trial court erred, because it does not adopt the trial court's finding of a single scheme to engage in "drug trafficking." However, that presents no barrier to it. It simply invents its own basis for holding that the offenses are "related."

[16] *Ante* at 9 (emphasis added).

[17] This conclusion simply reflects the majority's disagreement with how the *Tobey* Court defined "the same conduct or act." In effect, the majority uses its conclusion that defendant's conduct was part of an ongoing scheme "to package cocaine for distribution" to argue that the same conduct is involved in both offenses. This circular reasoning does nothing to advance the majority's argument, because it presupposes the very conclusion it is attempting to prove.

However, joinder of the charged offenses against defendant in this case was premised on the "single scheme or plan" part of MCR 6.120. Defendant's conduct was clearly not "the same conduct or act."

It was undisputed in the lower courts that defendant's crimes did not involve either "the same conduct" or "a series of acts connected together." The majority determines that an ongoing scheme or plan to "earn money by selling cocaine" is insufficient to deny severance under MCR 6.120. It also determines that an ongoing scheme or plan to "package cocaine for distribution" suffices to deny severance. I find this to be an arbitrary distinction. Moreover, I disagree with the majority that the record contains "myriad evidence" showing that defendant was engaged in an ongoing scheme to package cocaine for distribution.

10

conclusions that defendant's offenses were "related." It was not the same conduct or part of a single scheme or plan. Thus, none of the majority's analysis is tenable under the court rule or *Tobey*.

## A. *The Federal Rules and Caselaw Interpreting Them*

First, the provisions of the corresponding federal rules of criminal procedure, on which the majority relies heavily to support its holding, differ significantly from MCR 6.120. FR Crim P 8(a), which loosely tracks the definition of "related" offenses in MCR 6.120, defines such offenses more broadly than our court rule.[18]

In addition, FR Crim P 14(a), which governs severance of unrelated offenses, is discretionary, not mandatory like MCR 6.120(B). The federal rule also authorizes the court to sever offenses only when joinder prejudices the defendant. Again, MCR 6.120 is inapposite because it requires a court to sever all unrelated offenses upon a timely motion by the defendant, without requiring a defendant to show prejudice.

---

*Ante* at 9 n 10. Nothing in the record supports or even suggests that defendant's two arrests were anything more than two discrete occurrences of packaging illegal drugs. Separate, unrelated events are not "ongoing acts." There is no evidence of an underlying single purpose motivating defendant's actions in each offense, aside from the extraordinarily broad one used by the lower courts and the majority.

[18] FR Crim P 8(a) allows joinder when the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."

11

Second, caselaw interpreting the federal rule does not support the lower courts' interpretation of what types of conduct can be considered a "single scheme or plan." For example, in *United States v Saadey*,[19] on which the majority relies, the defendant was charged with, among other offenses, conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act (RICO).[20]

The defendant was an investigator employed by the county prosecutor. In 1994 and 1995, he participated in a case-fixing conspiracy. He argued that the counts charging him with filing false tax returns and credit applications had been improperly joined. The Sixth Circuit Court of Appeals disagreed, concluding that joinder had been proper because all the charges filed against him stemmed from conduct that was part of his "common scheme to defraud."[21]

Another case that the majority relies on, *United States v Graham*,[22] provides an even more compelling illustration of the connection necessary to establish a common scheme or plan. In *Graham*, the court upheld joinder of numerous drug and firearm charges against the defendant. However, the court based its holding on the motive underlying the defendant's perpetration of each

---

[19] *United States v Saadey*, 393 F3d 669 (CA 6, 2005).

[20] 18 USC 1961 *et seq.*

[21] *Saadey*, *supra* at 678.

[22] *United States v Graham*, 275 F3d 490 (CA 6, 2001).

12

offense, which was encapsulated in a charge of conspiracy to commit offenses against the United States.

The defendant in *Graham* was a member of a local militia organization that planned to attack government targets. He also grew and sold marijuana, the proceeds of which he used to purchase weapons for his militia activity. Testimony at the defendant's trial established that each of the charged offenses was directly related to the larger conspiracy and underlying motive for the offenses: defendant's distrust of government and participation in the militia organization.

The majority also relies on *United States v Fortenberry*.[23] There, the defendant was convicted of conspiracy to commit arson, possession of an unregistered firearm, and transportation of an undeclared firearm on a commercial airliner. The Fifth Circuit Court of Appeals upheld joinder of the offenses because they involved a common plan to take revenge on persons involved in defendant's divorce and custody battle.

B. *Requirements for Establishing a Single/Common Scheme or Plan*

The underlying premise throughout these cases is that a simple string of similar offenses, in and of itself, is not sufficient to establish a single common scheme or plan. Rather, the cases cited by the majority all involve situations in which each joined offense was committed with a particular motive or goal

---

[23] *United States v Fortenberry*, 914 F2d 671 (CA 5, 1990).

underlying the defendant's conduct.[24]  That common motive is what established

the common scheme or plan and made joinder appropriate.[25]

---

[24] In fact, in most of the cases the majority cites, the defendant was charged with conspiracy to commit a crime in addition to the joined offenses.  The courts in those cases typically determined that the other charged offenses were properly joined because the defendant committed them in order to accomplish the objectives of the underlying conspiracy.

[25] Justice Corrigan's opinion cites four cases from other states that it claims support its analysis.  It then quotes language from two of the cases that support the conclusion that temporal proximity between offenses is not required for them to be properly joined.  See *ante* at 25, quoting *Lessard v State*, 158 P3d 698, 704 (Wy, 2007); *State v Willis*, 181 Vt 170, 181; 915 A2d 208 (Vt, 2006).  As stated in note 5 of this opinion, I agree that temporal proximity between offenses is not required to establish that offenses are "related" as part of a single scheme or plan.  These cases therefore fail to advance the majority's argument.

Moreover, the majority's broad definition of "single scheme or plan" is inconsistent with the language and purpose of the court rule.  Other jurisdictions with similar court rules have correctly rejected such interpretations.  See *State v Denton*, 149 SW3d 1, 15 (Tenn, 2004) ("A larger plan or conspiracy in this context contemplates crimes committed in furtherance of a plan that has a readily distinguishable goal, not simply a string of similar offenses").  I acknowledge that Tennessee's severance rule differs from Michigan's.  Nevertheless, contrary to the view of Justice Corrigan's opinion, *Denton* is relevant here because it interpreted the common scheme or plan clause, not the evidentiary admissibility question.  Thus, the differences between the rules were not relevant to this portion of *Denton*'s analysis.

In fact, many courts consider a finding of a common motive or goal as a precondition for establishing a single or common scheme or plan under the joinder and severance rules.  *State v McCrary*, 621 SW2d 266, 271 (Mo, 1981) ("We find that the essential test in determining whether a common scheme or plan exists, in a case involving a single defendant acting alone, is the requirement that all the offenses charged must be 'products of a single or continuing motive.'") (citation and emphasis deleted); *State v Oetken*, 613 NW2d 679, 688 (Iowa, 2000).  Justice Corrigan's opinion correctly notes that *McCrary* and *Oetken* upheld joinder in those cases.  Nevertheless, they *do* support my conclusion that finding the existence of a common or single scheme or plan requires more than the fact that the offenses were similar in nature.  For example, in *McCrary*, the defendant's

Hence, each of these cases involves situations in which the joined offenses were either planned in advance of their commission or committed to further the defendant's unified goal. This interpretation is what distinguishes acts committed as part of a "single scheme or plan" from acts that are of "the same or similar character."[26] That these two distinct provisions are not intended to capture the same connection between offenses is evidenced by the fact that the rules in many jurisdictions include both.[27]

---

broader goal in committing each offense was his "plan of harassment and revenge aimed at the Penermon family." *Id.* at 272.

[26] Authority from other jurisdictions discussing the proper interpretation of a common or single scheme or plan, as opposed to conduct of the same or similar character, supports this interpretation. Compare *United States v Jawara*, 474 F3d 565, 574 (CA 9, 2007) ("[S]ituations where we have determined that a 'common scheme or plan' exists . . . typically involve a concrete connection between the offenses that goes beyond mere thematic similarity."); with *McLeod v State*, 581 So 2d 1144 (Ala Crim App, 1990) (finding no error in the joinder of four counts of unlawful distribution of cocaine because all four offenses were clearly of the same character); *United States v Coleman*, 22 F3d 126, 133-134 (CA 7, 1994), abrogated on other grounds as recognized by *Riley v Commonwealth*, 120 SW3d 622 (Ky, 2003). *Coleman* interpreted the "same or similar character" language of FR Crim P 8(a) to mean that if offenses are of a like class, although not connected temporally or evidentially, the requisites of proper joinder should be satisfied. The Court used an example that is instructive here: two armored car robberies committed months apart are offenses of the same or similar character; possessing five kilograms of cocaine and defrauding a bank, even if they occur on the same day, are not. The Court ultimately concluded that "joinder under Rule 8(a) was appropriate because Coleman was charged with four counts of possession of a firearm, identical 922(g)(1) offenses which could only vary in time and location but not in their essential elements." *Coleman*, *supra* at 134.

[27] That the court rules in some jurisdictions contain both provisions certainly suggests that they cover different types of connections between offenses. So does the commentary to the ABA standards. The majority apparently concedes that the

15

The commentary to the revised American Bar Association's Standards for Criminal Justice supports this interpretation. It states:

> [Common plan] offenses involve neither common conduct nor interrelated proof. Instead, the relationship among offenses (which can be physically and temporally remote) is dependent upon the existence of a plan that ties the offenses together and demonstrates that the objective of each offense was to contribute to the achievement of a goal not attainable by the commission of any of the individual offenses. A typical example of common plan offenses is a series of separate offenses that are committed pursuant to a conspiracy among two or more defendants. Common plan offenses may also be committed by a defendant acting alone who commits two or more offenses in order to achieve a unified goal.[28]

By contrast, the commentary describing offenses of the same or similar character states, "Similar character offenses normally involve the repeated commission of the same offense[,] often with the same modus operandi."[29]

---

offenses in this case were of the same or similar character. *Ante* at 9 ("The charges stemming from both arrests were not 'related' *simply* because they were 'of the same or similar character.'") (emphasis added). Given that the charges stemming from the two arrests were for virtually the same offenses, it is difficult to see how one could not come to this conclusion. It is on this basis that I assert that the majority has read the "same or similar character" language into MCR 6.120. *Ante* at 21.

Nevertheless, the majority argues that the offenses in this case were not "related" for this reason. I agree that under MCR 6.120 and the ABA standards, same or similar character offenses are not "related" offenses. But this assertion does nothing to prove the majority's underlying point—that the offenses were part of a single scheme or plan. I fail to see how this pronouncement, which again presupposes its conclusion is correct, advances the majority's argument.

[28] 2 ABA Standards for Criminal Justice, Commentary to Standard 13-1.2 (2d ed 1980).

[29] 2 ABA Standards for Criminal Justice, Commentary to Standard 13-2.1 (2d ed 1980).

16

Michigan has not adopted the "same or similar character" language as part of MCR 6.120. The majority implicitly does so here by denying severance of offenses that are of the same or similar character under the misnomer of a single scheme or plan.

Contrary to the majority's conclusion, defendant's acts of "packaging cocaine for distribution" do not meet the threshold for establishing a single scheme or plan. Unlike in *Fortenberry*, defendant in this case did not commit both drug offenses as part of a plan to exact revenge. Unlike in *Graham*, defendant's motive for committing these offenses did not stem from his participation in a militia organization based on an underlying distrust of government.

In this case, there is no evidence that defendant either planned his two drug offenses in advance of their commission or that he had a unified goal for committing them. The intent to engage in "drug trafficking," or "earn money by selling cocaine," is the intent to engage in the conduct itself, not evidence of a unified goal motivating the commission of the offenses.[30] Labeling this conduct as

---

[30] This conclusion is supported by the Arkansas Supreme Court's decision in *Bunn v State*, 320 Ark 516; 898 SW2d 450 (1995). There, the court reversed a defendant's convictions of three counts of delivery of cocaine. The reversal resulted from the trial court's erroneous denial of the defendant's motion to sever the charged offenses. The Arkansas Supreme Court held that no single scheme or plan existed and noted that "[t]he purpose of [Arkansas's severance rule] is to give effect to the principle that the State cannot bolster its case against the accused by proving that he has committed other similar offenses in the past . . . . The record is void of any evidence that the offense charged in Count III was planned in advance or as a part of the offenses charged in Counts I and II." *Id.* at 523 (citation and quotation marks omitted).

17

a plan to "package cocaine for distribution" is nothing more than wordplay designed to evade this determination. Although the drug offenses in this case involve conduct of the "same or similar character," this similarity is not included in the definition of "related" offenses in MCR 6.120. Thus, although joinder under the federal rule might be appropriate,[31] MCR 6.120 mandates severance upon the defendant's timely motion to sever.

C. *The Majority's Interpretation is an Unreasonably Broad One*

The majority's analysis, taken to its logical conclusion, would eviscerate the mandatory severance provision in MCR 6.120 and give trial courts unfettered discretion to deny defendants' motions to sever. Defendants would never be entitled to severance of any drug offenses because such offenses could always be deemed "related." Similarly, defendants charged with criminal sexual conduct offenses would never be entitled to severance; their conduct always could be deemed part of a scheme to molest victims for the defendants' sexual gratification. Such a broad construction of the joinder rules has been appropriately criticized. For example, in *State v Denton*,[32] the Tennessee Supreme Court observed that "[t]he argument that sex crimes can be construed as part of a continuing plan or

---

[31] Many commentators, however, have strongly criticized joinder of offenses based solely on the grounds that they are of the same or similar character. See, e.g., LaFave, Criminal Procedure (3d ed), §17.1(b), p 762.

[32] *Denton*, *supra* at 15.

conspiracy merely by the fact that they are committed for sexual gratification has previously been rejected."

Thus, under the majority's analysis, severance of the charged offenses would be unnecessary regardless how far apart in time and space the offenses occurred or the underlying motive for them. Such outcomes arguably would be appropriate if MCR 6.120 did not require severance when the offenses are of the "same or similar character." The federal rule does not require it. As noted previously, however, our rule omits such language from its definition of "related" offenses.

Under the appropriate interpretation of MCR 6.120, defendant's actions in this case were insufficiently linked to be treated as "related" and part of a "single scheme or plan." The *Tobey* Court rejected the argument that the defendant had a single scheme "to make continuous sales of drugs," because the sales were not multiple acts aimed at achieving the same goal. Presumably the defendant in *Tobey* was just as interested in "earn[ing] money" from selling drugs as was defendant in this case. However, *Tobey* expressly rejected finding a single scheme or plan under similar circumstances. Given that *Tobey* and MCR 6.120 are reconcilable, there is no basis for the majority to abandon this key holding from *Tobey*.

Finally, I note that other states with more expansive joinder and severance rules are typically far more protective of a defendant's rights in this context than the federal rule. These states also grant defendants a mandatory right to severance

19

of multiple offenses under certain circumstances.[33] My conclusion in this case is consistent with the broad interpretation of the right to severance that courts in jurisdictions with similarly worded rules have adopted. Moreover, such an interpretation of MCR 6.120 is entirely in accord with the language of the rule and the staff comment stating that the rule is "consistent" with *Tobey*.

### III. HARMLESS ERROR

Finally, having concluded that defendant was entitled to mandatory severance of the charges against him, I also conclude that the failure to sever the charges was not harmless error.[34] MCL 769.26 states that a preserved nonconstitutional error is not grounds for reversal unless it affirmatively appears more probable than not that the error was outcome determinative.[35] MCR 2.613(A) provides that an error is not grounds for disturbing a judgment unless refusal to do so appears inconsistent with substantial justice. The statute and the

---

[33] For example, Tenn R Crim P 14(b)(1) provides:

> (1) *Involving Permissive Joinder of Offenses.* If two or more offenses are joined or consolidated for trial pursuant to Rule 8(b), the defendant has the right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible in the trial of the others.

[34] While I am not convinced that a harmless-error analysis is appropriate here, because I conclude that the error in this case was not harmless, I need not answer that question.

[35] *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

court rule are consistent with one other and simply reflect "different articulations of the same idea."[36]

The majority concludes that, even if the denial of defendant's motion to sever in this case were erroneous, it would be harmless because the error was not outcome determinative. It rests this conclusion on two bases. First, it concludes that the evidence of each charged offense could have been introduced at the other trial under MRE 404(b). Second, it observes that the United States Supreme Court has held that improper joinder, by itself, does not violate the United States Constitution.[37]

I believe that the trial court's failure to sever the offenses in this case cannot be deemed harmless. MCR 6.120 provides an unqualified, *mandatory* right to severance for unrelated offenses.[38] In cases where an unequivocal right has

---

[36] *People v Robinson*, 386 Mich 551, 562; 194 NW2d 709 (1972).

[37] *Ante* at 20, quoting *United States v Lane*, 474 US 438, 446 n 8; 106 S Ct 725; 88 L Ed 2d 814 (1986). The majority also observes that there is "'no such thing as misjoinder of offenses in Michigan.'" *Ante* at 20 n 27, quoting 2 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 17:36. Again, while technically correct, this statement is irrelevant. MCR 6.120(A) is permissive. It *allows* joinder of any and all offenses. MCR 6.120(B), by contrast, is mandatory and *requires* that unrelated offenses be severed upon a timely motion to sever.

[38] "Neither *Tobey* nor the court rule sets forth any exception to a criminal defendant's absolute right to severance of unrelated offenses. Both provide an absolute right of a criminal defendant to insist on separate trials." *Daughenbaugh*, *supra* at 510.

been violated, as here, the error cannot be dismissed as harmless. Deprivation of that right inevitably results in substantial prejudice.[39]

The majority's conclusion that any error was harmless because evidence of one offense would have been admissible in the trial for the other offenses takes too much for granted. To succeed, this argument depends on the existence of the very "single scheme or plan" that would establish that the offenses were "related" and make severance unnecessary. Only once such a scheme has been shown would evidence of other offenses be admissible under MRE 404(b).[40]

---

[39]

> "[A defendant] has a right to be warned by the complaint and warrant of what he is accused, and ought not to be convicted of two different crimes, committed at different times, under one information, with the evidence of each confounded as a whole, and used indiscriminately to convict him of both. Such a proceeding violates every principle of justice, and places him at the mercy of the prosecutor; and, as, in this case, evidence not competent to prove one of the offenses, but admissible as to the other, is used to establish both crimes. Such a trial must necessarily be an unfair and illegal one." [*Tobey*, *supra* at 154, quoting *People v Aikin*, 66 Mich 460, 472; 33 NW 821 (1887).]

[40] The majority is correct that "other acts" evidence is admissible under MRE 404(b) for purposes other than to show a defendant's scheme or plan. However, the prosecutor argued in the trial court for joinder, or in the alternative, to introduce evidence of defendant's other crimes at the separate trials, based on defendant's common scheme. Defendant was entitled to mandatory severance of the offenses against him. Therefore, it is improper simply to assume that evidence of defendant's other crimes would be admissible for another purpose under MRE 404(b), rendering any error in failing to sever the charges harmless. Finally, even if there were another basis for admitting the evidence under MRE 404(b), it might nevertheless not be admissible if the court concluded that its prejudicial effect outweighed its probative value. See MRE 403.

Moreover, common sense dictates that an error cannot be harmless when a jury convicts a defendant of an offense that it should not have been allowed to consider. In *People v Martin*,[41] a majority of this Court held that a trial court's jury instruction that erroneously allowed the jury to consider a lesser included offense was not harmless. *Martin* is analogous here because, in both cases, the jury convicted the defendant of charges it should never have been allowed to consider. The enormity of the prejudice to a defendant in such circumstances is clear, and this Court recognized it in *Martin*.

## IV. CONCLUSION

I dissent from the majority's conclusion that MCR 6.120 superseded *People v Tobey* and that severance of the charged offenses in this case was not required under the rule. I also believe that the error cannot be considered harmless under MCL 769.26 and MCR 2.613(A). Therefore, I would reverse the Court of Appeals judgment and remand the case to the trial court for further proceedings.

Marilyn Kelly
Michael F. Cavanagh
Diane M. Hathaway

---

[41] *People v Martin*, 482 Mich 851 (2008).

23